UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

———————————————————————

COMPREHENSIVE HEALTH ACADEMY, LLC,
d/b/a COMPREHENSIVE HEALTH ACADEMY
SCHOOL OF PRACTICAL NURSING, *et al.*

                  Plaintiffs,

        v.                                       Civil Action No. 1:06cv01050
                                                (RBW)

DISTRICT OF COLUMBIA, *et al.*

                  Defendants.

———————————————————————

### DEFENDANTS' MOTION TO DISMISS OR, IN THE ALTERNATIVE, FOR SUMMARY JUDGMENT

Pursuant to Fed.R.Civ.P. 12(b)(6), Defendants District of Columbia, District of Columbia Department of Health, Professional Licensing Association, the D.C. Board of Nursing, Joanne Joyner, and Karen Scipio-Skinner (collectively Defendants), by and through undersigned counsel, hereby move this Honorable Court to dismiss the complaint on the following grounds: (1) certain of the governmental defendants are *non sui juris* and cannot be sued; (2) Plaintiffs have failed to state cognizable claims for which relief can be granted; and (3) Plaintiff Comprehensive's claim is not ripe for adjudication nor has it exhausted its administrative remedies. Further, the claims against the individual defendants should be dismissed because they are entitled to "qualified immunity."

In the alternative, if this Court were to deny Defendants' Motion to Dismiss as to any causes of action, Defendants alternatively move for summary judgment pursuant to Fed.R.Civ.P. 56(b).  Defendants submit that there is no genuine issue as to any material

fact on any of the causes of action included in Plaintiffs' complaint and, therefore, Defendants are entitled to a judgment as a matter of law.

The grounds for said Motion are set forth more fully in the accompanying Memorandum of Points and Authorities and alternative proposed Orders are submitted herewith. As required by LCvR 56.1, a Statement of Material Facts As to Which There is No Genuine Issue has been provided.

Respectfully submitted,

ROBERT J. SPAGNOLETTI
Attorney General, D.C.

GEORGE C. VALENTINE
Deputy Attorney General, D.C.
Civil Litigation Division


_____/s/ Richard S. Love_____
RICHARD S. LOVE, D.C. Bar No. 340455
Chief, Equity I
441 Fourth Street, N.W., 6th Floor South
Washington, D.C. 20001
Telephone: (202) 724-6635
Facsimile: (202) 727-0431


_____/s/ Ellen A. Efros_____
ELLEN A. EFROS, D.C. Bar No. 250746
Assistant Attorney General
Equity 1
441 Fourth Street, N.W., 6th Floor South
Washington, D.C. 20001
Telephone: (202) 442-9886
Facsimile: (202) 727-0431
ellen.efros@dc.gov

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

_____

**COMPREHENSIVE HEALTH ACADEMY, LLC,**
**d/b/a COMPREHENSIVE HEALTH ACADEMY**
**SCHOOL OF PRACTICAL NURSING,** *et al.*

                Plaintiffs,

      v.                                   Civil Action No. 1:06cv01050
                                           (RBW)

**DISTRICT OF COLUMBIA,** *et al.*

                Defendants.

_____

## MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS, OR IN THE ALTERNATIVE, FOR SUMMARY JUDGMENT

### I.  PRELIMINARY STATEMENT

Defendants,[1] pursuant to Fed.R.Civ.P. 12(b)(6) and 56(b), move this Court to dismiss the complaint or, in the alternative, for summary judgment. This memorandum of points and authorities is provided in support of the Defendants' dispositive motion in accordance with LCvR 7.1(a). As required by LCvR 56.1, a Statement of Material Facts As to Which There is No Genuine Issue ("SMF") is provided.[2]

The Court should deny the requested relief because the claims of Plaintiff Comprehensive (hereafter referred to as "CHA") are not ripe and also because Plaintiffs' claims are substantively meritless. The complaint reflects a profound misunderstanding

_____

[1] The instant Motion is filed on behalf of Defendants the District of Columbia, the District of Columbia Department of Health, Professional Licensing Administration, the D.C. Board of Nursing (the "Board"), Joanne Joyner and Karen Scipio-Skinner. Dr. Joyner, the Chairperson of the Board, and Ms. Skinner, the Executive Director of the Board, have been named individually and in their official capacities as D.C. government employees. Donna Minor, an independent nurse consultant hired by the Board, also is sued as a Defendant. The instant Motion, however, is not filed on behalf of Ms. Minor since, as of this date, she has not been properly served and is not represented by undersigned counsel.

[2] *Exhibit A* hereto.

of law and fails to state any cognizable basis for the claims alleged therein.  Rather, the instant proceeding appears to be a calculated ploy to bring pressure on the Board not to exercise its independent professional judgment with respect to whether accreditation for CHA's nursing program should be granted. The complaint appears to represent an intentional litigation strategy of asserting baseless claims and then seeing what, if anything, might stick.

Among other things, Plaintiffs' complaint is nothing more than preemptive jockeying in advance of a proceeding when CHA would be given notice and an opportunity to be heard concerning action by the Board on its request for accreditation. As will be demonstrated herein, CHA's claims are not ripe for adjudication and CHA has not exhausted its administrative remedies.  Indeed, as of the date of the filing of this action, a Notice of Intent to Withdraw Accreditation, which would trigger the right of CHA to be heard, had not issued (and there is no contrary representation in the complaint).  Thus, at a minimum, the complaint must be dismissed since CHA's claims are not ripe for adjudication by any court.

As for the claims of Plaintiff Adedokun ("Adedokun"), they are wholly without merit and are a calculated, improper, and irrelevant attempt to "link" Adedokun's race and/or national origin to a decision concerning accreditation for CHA's nursing program. Among other things, Adedokun has no constitutional right to be approved as the Nurse Administrator of CHA and there is no allegation of the complaint that can serve as any predicate for a claim of discrimination.   Adedokun's vague, conclusory, and unsubstantiated allegations of discrimination do not make out a federal claim and, more importantly, are contradicted by the facts.

In addition, the claims against certain Defendants (the DC Department of Health, Professional Licensing Administration and the DC Board of Nursing) must be dismissed on procedural grounds. These named District defendants are non *sui juris* and cannot be sued in their own capacity. Similarly, the claims against the individually named defendants should be dismissed since such individuals, as District of Columbia employees performing their official responsibilities, are entitled to qualified immunity.

## II. STATEMENT OF FACTS

On or about July 2, 2003, CHA was granted Provisional Accreditation approval as a Practical Nursing [educational] Program by Defendant District of Columbia ("Defendant DC") through its Health Professional Licensing Administration, Board of Nursing (collectively referred to here as the "Board").[3] In October 2004, the Board informed CHA of five specific issues that needed to be addressed to be in compliance with District of Columbia requirements to qualify for full accreditation as a Practical Nursing Program.[4] Thereafter, on April 14, 2005, Dr. Joyner ("Joyner"), Chairperson of the Board notified Adedokun that the Board voted to request that a Notice of Intent to withdraw provisional accreditation be prepared since CHA had failed to comply with the regulations requiring a qualified nurse administrator.[5]

As relevant here, in April 2005 and on May 16, 2005, CHA informed the Board that Adedokun would be serving as Program Administrator of CHA.[6] CHA also requested "permanent" certification for its nursing program. In response, the Board

---

[3] *Complaint* at ¶2; *SMF* ¶1
[4] *Id.* at ¶3; *See Declaration of Karen Scipio-Skinner* ("Skinner Decl.") at ¶10 attached hereto as *Exhibit B*; *SMF* ¶2
[5] *Skinner Decl* at ¶12.; *SMF* ¶4. Since receiving provisional accreditation in July 2003, CHA had problems recruiting and retaining a qualified nurse administrator. *See Skinner Decl.* at ¶¶3-10; *SMF* ¶3.
[6] *Skinner Decl.* at ¶13; *SMF* ¶5.

stated that it would review Adedokun's qualifications to determine whether he met the Board's regulatory requirements for Program Administrator.[7] The Board informed CHA that it does not grant "permanent" accreditation; that it only has authority to grant full or conditional accreditation. The Board further noted that at a May 13 meeting, CHA had been informed of the Board's April meeting when it reviewed CHA's accreditation status and determined that the program was not in compliance with the regulatory requirement 17 DCMR §5604.2(a)(1),[8] which requires the program to have a qualified administrator. CHA's request for consideration of Adedokun as Administrator was placed on the Board's June 1, 2005, agenda and Adedokun was invited to attend.[9]

At the Board's June 1, 2005 meeting, Adedokun was questioned concerning his qualifications and experience.[10] Thereafter, on June 14, 2005, the Board notified CHA that Adedokun did not have the necessary skills and knowledge, particularly concerning curriculum development, integrating theory into practice, program evaluation, and other essential skills needed by a program administrator of a newly established practical nursing program. The Board, however, allowed CHA six (6) months, or no later than December 15, 2005, to hire an administrator with the required skills that would meet its approval.[11]

After the June 1 meeting, and prior to its June 14 communication, the Board received a letter from Adedokun complaining of "discrimination, prejudice, and mental

---

[7] *Skinner Decl.* at ¶13 and letter of May 19, 2006, attached thereto; *SMF* ¶6.

[8] At the time of CHA's application for accreditation, 17 D.C.M.R. §5604.2(a)(1) [now §§ 5607.1, 5607.2, and 5607.3] provided that "[a]qualified administrator of the nursing education program shall be a Registered Nurse licensed in good standing in the District of Columbia with the additional education and experience necessary to direct the particular program preparing graduates for the safe and effective practice of nursing. The administrator is accountable for the administration, planning, implementation, and evaluation of the nursing education program."

[9] *Skinner Decl.* at ¶13 and May 19, 2005 letter attached thereto; *SMF* ¶6

[10] *Skinner Decl.* at ¶14; *SMF* ¶7.

[11] *Skinner Decl.* at ¶ 14; *SMF* ¶7.

humiliation" arising out of the Board's questions concerning his qualifications. The Board's June 14 response made clear that the purpose of the meeting was not to humiliate or discriminate against Adedokun, but to determine whether he was qualified to be nurse administrator of CHA.    The Board also explained that since CHA was a newly established program, a major factor to be considered was the qualifications of the nurse administrator.    Further, the Board reminded CHA that when it made application to obtain initial accreditation, it presented several people with master's degrees and considerable clinical experience that were not approved because they did not have experience in administering an educational program and lacked knowledge in curriculum development.[12]

CHA, through its President/CEO Mr. Oboh, promptly responded to the Board's June 14, 2005 communication. By letter dated June 21, 2005, Mr. Oboh stated that the Board's decision regarding Adedokun was "respected and accepted" and also expressed "profound gratitude" to the Board for "the good gesture of generously giving CHA six months to hire a qualified director of nursing."[13]    In order to move promptly "to implement the recommendations of the Board,"[14] CHA proposed the appointment of Rachael Rizzo as the director of nursing and attached a copy of her resume and summarized her qualifications for the Board's consideration.  Mr. Oboh's June 21, 2005, letter concluded stating, "[o]nce again I thank the entire board members for giving me the opportunity to start a new cordial working relationship."  The Board ultimately accepted Ms. Rizzo's as CHA's nursing administrator.

---

[12] *Skinner Decl.* at ¶15 and June 14, 2005 letter attached thereto.; *SMF* ¶8.

[13] *Skinner Decl.* at ¶ 16 and June 21, 2005 CHA letter to Board attached thereto.; *SMF* ¶9.

[14] *Id.*

Subsequently, on April 17, 2006, a site visit of CHA was conducted by an independent nurse educator-consultant, Defendant Minor, and Mr. Rick Garcia, a Board member.[15]  A site visit report was prepared by Ms. Minor, the Board's educational consultant, that identified several deficiencies in CHA's program.[16]  As a result of these findings and previous concerns respecting the CHA program, the Board made a determination that CHA was not in compliance with the provisions of 17 DCMR §56 as it relates to operation of a practical nursing school and voted to deny accreditation.[17]  At the Board's May 3, 2006 meeting, the results of the Minor site visit were discussed with representatives of CHA.[18]  The decision to deny accreditation to CHA was for four primary reasons.[19]  As of the date of the filing of the instant complaint, however, no Notice of Intent has issued concerning CHA's accreditation which would trigger the right of CHA to request a hearing respecting Ms. Minor's findings and the Board's decision.

Contrary to the innuendo and unsupported and unsupportable accusations of the complaint, Adedokun's race or national origin never was discussed or considered as a reason not to grant CHA full accreditation.[20]  Indeed, at the time of the April 17, 2006 site

---

[15] The purpose of the site visit was part of the process of the Board's consideration of CHA's request for full accreditation. *Skinner Decl.* at ¶18 and letter of February 15, 2006 attached thereto.; *SMF* ¶10.

[16] *Skinner Decl.* at ¶19.; *SMF* ¶11

[17] *Skinner Decl.* at ¶20.; *SMF* ¶12.

[18] The following persons were present on behalf of CHA:  Rachael Rizzo-Mitzner, Director of Nursing, Adedokun, Program Administrator, and Oboh, President.  The report of the site visit was given to CHA in advance of the Board meeting.  *Skinner Decl.* at ¶20; *SMF* ¶12.

[19] The reasons are (1) lack of students who enter, progress, and graduate from the program; (2) lack of evidence of clinical competencies prior to entering the clinical setting; (3) lack of faculty in test design and evaluation only done by Director of Nursing and Primary Administrator doing primary design; and (4) lack of consistent formative evaluation during the program to identify at-risk students for academic failure *Skinner Decl.* at ¶20; SMF ¶¶12-13.

[20] As noted above, the initial decision not to approve the appointment of Adedokun as Nurse Administrator of CHA was based on the Board's assessment that he did not have the required experience or skill set to administer a newly established nursing program.  *Skinner Decl.* at ¶22; *SMF* ¶14.  Moreover, the Board's 2005 decision in this respect was accepted by CHA and Ms. Rizzo was proposed as CHA's administrator and accepted by the Board. The allegation of paragraph ¶6 of the complaint that the Board's decision not to grant full accreditation is based on discrimination is totally fabricated, without any substantive basis, and wholly contradicted by the *Skinner Decl.* and the documents attached thereto.

visit on which the decision to deny full accreditation was predicated, Rizzo, not Adedokun, was the Program Director. Moreover, the Board's decision was based on objective findings by an independent nurse-consultant of deficiencies in CHA's program and, accordingly, its failure to comply with the regulations.[21]

As the Declaration of Joanne Joyner ("Joyner Decl.")[22], Chairperson of the Board, demonstrates, the Board used the same regulations, guidelines, and criteria to assess CHA as used to evaluate all Licensed Practical Nursing schools.[23] Moreover, as the *Joyner* and *Skinner Decls.* and documents attached thereto reflect, CHA was made aware of the criteria and what was required to receive full accreditation during its many appearance before the Board and through correspondence from Ms. Skinner, the Executive Director of the Board. The correspondence and meetings with the Board identified specific areas that CHA would need to improve and further informed CHA that the pass rates of students was only one of several criteria used by the Board to determine accreditation status.[24]

Similarly, contrary to the unsupported and fabricated allegations of the complaint, the *Skinner Decl.* makes clear that *if* the Board's intent were to discriminate against CHA or Adedokun as alleged, it had many opportunities not to consider CHA for accreditation. To the contrary, the documents and the Declarations reflect that CHA was allowed numerous opportunities to comply with the regulatory requirements.[25]

Further, the complaint is just plain wrong in alleging that Defendants Joyner, Minor, and Skinner conspired to deprive CHA of its accreditation with the purposeful

---

[21] *Skinner Decl.* at ¶¶20, 22; *SMF* ¶¶12-14.
[22] Attached hereto as *Exhibit C.*
[23] *Joyner Decl.* at ¶¶3-4; *SMF* 17.
[24] *See Joyner Decl.* at ¶14; *SMF* ¶17.
[25] *See Skinner Decl.* at ¶28; *SMF* ¶17.

intent to discriminate against it or that they have a conflict of interest by accepting appointment to or employment by the Board while "simultaneously maintaining employment with an educational entity with a direct financial interest in the denial of Full Accreditation to Plaintiff."[26]   Not only does Plaintiffs' complaint fail to allege any cognizable legal theory on which relief can be granted, but the assertions themselves are fabricated and erroneous.

As the *Joyner Decl.* demonstrates, all matters before the Board are confidential and there has been no discussion by Dr. Joyner regarding CHA or its accreditation status with anyone other than members and staff of the Board.[27]   Further, contrary to Plaintiffs' baseless allegations,[28] Dr. Joyner never has taught in nor had any association with the LPN program at the University of the District of Columbia ("UDC").[29]   Further, Dr. Joyner does not advise students about LCN programs and, specifically, has not advised any students for or against matriculation at CHA.[30] Similarly, and again contrary to the wholly fabricated accusations of the complaint, Ms. Skinner has absolutely no association with the LPN Nursing Program at UDC.[31]

Finally, and again contrary to the fabricated allegations of the complaint, none of the individually named Defendants ever voted to deny CHA accreditation.[32]

---

[26] *Complaint* at ¶36.  *See also complaint* at ¶¶ 25(f), 27(a), and 35.
[27] *Joyner Decl.* at ¶2; *SMF* ¶18.
[28] *See Complaint* at ¶¶25(f), 27(a) and (b), 35, 36.
[29] *Joyner Decl.* at ¶5; *SMF* ¶18
[30] *Id.*
[31] *Skinner Decl.* at ¶29; *SMF* ¶18.
[32] *Skinner Decl.* at ¶24; *SMF* ¶16.

## II. ARGUMENT

A.  *Standards for a Motion to Dismiss and Summary Judgment*

In evaluating a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6) for failure to state a claim upon which relief can be granted, a court must accept the allegations in the complaint as true. *See*, *e.g.*, *Croixland Properties Ltd. Partnership v. Corcoran*, 174 F.3d 213, 215 (D.C. Cir. 1999).   All reasonable inferences must be drawn in favor of the plaintiff, and a court should only dismiss a complaint for failure to state a claim "'if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations.'" *Id*. [*quoting Hishon v. King & Spaulding*, 467 U.S. 69, 73 (1984)]; *see also Conley v. Gibson,* 355 U.S. 41, 45-46 (1957)*; Price v. Crestar Secs. Corp.*, 44 F. Supp. 2d 351, 353 (D.D.C. 1999). [33]

In a Rule 12(b)(6) analysis, while the complaint is to be construed liberally, courts "need not accept inferences drawn by plaintiffs if such inferences are unsupported by the facts set out in the complaint.  Nor must the court accept legal conclusions cast in the form of factual allegations." *Kowal v. MCI Communications Corp., Inc.*, 16 F.3d 1271, 1276 (D.C. Cir. 1994) [*citing Papasan v. Allain*, 478 U.S. 265, 286 (1986)]. Moreover, while the court "must assume the truth of all statements proffered by the party opposing summary judgment," it need not consider wholly conclusory statements for which no supporting evidence is offered. *Greene v. Dalton*, 164 F.3d 671, 674–75 (D.C. Cir. 1999).

Thus, a motion to dismiss pursuant to Rule 12(b)(6) should be granted when it appears that, under any reasonable reading of the complaint, plaintiff will be unable to prove any set of facts that would justify relief. *Conley*, 355 U.S. at 45.  Here, viewing the

---

[33] Defendants here reserve and do not waive any future defensive motions and do not admit the factual allegations of the complaint except for purposes of the instant motion.

allegations of the complaint in the light most favorable to Plaintiffs, no set of facts have been alleged which would entitle Plaintiffs to the relief requested.

Alternatively, Defendants assert that summary judgment should be entered in their favor in accordance with Fed.R.Civ.P. 56(c). Summary judgment is appropriate where "there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Id.* Only disputes as to material facts, or facts that might significantly affect the outcome of a suit under governing law, preclude the entry of summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–248 (1986). In other words, it is insufficient, to avoid summary judgment that some factual issues remain in the case; an issue must be both *genuine* and *material* to preclude the entry of summary judgment. *Id.*

If a court considers materials outside the pleadings in a ruling on a Rule 12(b)(6) motion to dismiss for failure to state a claim, the court must convert the motion to dismiss into a motion for summary judgment. Fed. R. Civ. P. 12(b); *see also Haase v. Sessions*, 835 F.2d 902, 905–906 (D.C. Cir. 1987).

Summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). A "complete failure of proof concerning an essential element of the non-moving party's case necessarily renders other facts immaterial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

Defendants are entitled to summary judgment if they can demonstrate Plaintiffs' inability to prove any of the required elements of their case. *Id.* at 321-322. Mere

allegations or denials are insufficient to defeat a proper summary judgment motion. Rather, Plaintiffs bear the affirmative burden to present, by affidavits or other means, *specific facts* showing that there is a genuine issue for trial. *Id.* at 248-49. The adverse party must do more than "show there is some metaphysical doubt as to material facts." *Matsushita Elec. Industries v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).

Here all of the allegations in the instant complaint fail as a matter of law. No factual development can resuscitate them. What Plaintiffs claim is a breach of their constitutional rights is nothing more than an ordinary dispute with the Board concerning CHA's accreditation.[34] Not only is that issue not ripe for consideration by this Court, but at the appropriate time, there is an administrative process which Plaintiff CHA first must exhaust before presenting any claims to any Court concerning accreditation.

Plaintiffs' claims essentially are "state law claim[s] in federal garb." *Barwood, Inc. v. District of Columbia*, 202 F.3d 290, 294 (2000). Here, Plaintiffs, in effect, seek to peremptorily challenge a decision of the Board concerning CHA's accreditation. This certainly is not a question of constitutional import; rather it is one of local law and, at the appropriate time, its resolution is best left to the local courts.

### B. Defendants DC Department of Health, Professional Licensing Administration And DC Board of Nursing Are Non-Sui Juris

The above-named Defendants are public bodies within the government of the District of Columbia. Public bodies, however, have only such powers as are conferred on them by statute. These Defendants neither are authorized to sue nor be sued in their own name.

---

[34] Adedokun's claims do not even rise to the level of a claim of a violation of any cognizable constitutional right since Adedokun has no "right" as a matter of law to be approved by the Board as CHA's program administrator.

The overwhelming weight of case law dictates that subordinate agencies within the District of Columbia government are not subject to suit. *Blackmar v. Guerre*, 342 U.S. 512 (1952); *Community Housing Trust v. Dept. of Consumer and Regulatory Affairs*, 257 F. Supp.2d 208 (D.D.C. 2003):

> The law is clear that "agencies and departments within the District of Columbia government are not suable as separate entities." *Does I through III v. District of Columbia*, 238 F. Supp. 2d 212, 222 (D.D.C. 2002) (quoting *Gales v. District of Columbia*, 47 F. Supp. 2d 43, 48 (D.D.C. 1999) (*in turn* citing *Fields v. District of Columbia Dep't of Corr.*, 789 F. Supp. 20, 22 (D.D.C. 1992)); *see also Arnold v. Moore*, 980 F. Supp. 28, 33 (D.D.C. 1997) ("governmental agencies of the District of Columbia are not suable entities") (citing *Roberson v. District of Columbia Bd. of Higher Educ.*, 359 A.2d 28, 31 n.4 (D.C. 1976); *Miller v. Spencer*, 330 A.2d 250, 251 n.1 (D.C. 1974)); *Jenkins v. District of Columbia*, 1996 U.S. App. LEXIS 34431, 1996 WL 440551, *1 n.2 (D.D.C. 1996). Accordingly, plaintiff's charges against the Department of Consumer and Regulatory Affairs, the Office of the Chief Financial Officer, and the Office of Tax and Revenue shall be dismissed.

*Id.* at 217 (footnote omitted). *See also Kundrat v. District of Columbia*, 106 F. Supp.2d 1 (D.D.C. 2000) ["overwhelming weight of precedent" in this Circuit holds that, absent explicit statutory authority, agencies within the District government are not suable as separate entities]; *Hinton v. Metropolitan Police Department*, 726 F. Supp. 875 (D.D.C. 1989).[35]

Thus, because the above-named Defendants do not possess the legal authority to sue and be sued in their own names, Plaintiffs' claims against them must be dismissed.[36]

---

[35] To the same effect is the very recent decision of this District in *Save Our Schools-Southeast & Northeast v. District of Columbia Board of Education*, 2006 U.S. LEXIS 45073, *24 (Civil Action No. 04-1500 HHK July 3, 2006).

[36] To the extent Plaintiffs would challenge a *final decision* of a District agency, those challenges belong in the D.C. Court of Appeals ("DCCA"), which can hear all of Plaintiffs' purported constitutional claims. *See* D.C. Official Code §§ 2-510(a)(1), 11-722 (DCCA has jurisdiction over appeals from final agency decisions, and is empowered to interpret the Constitution). Here, of course, as discussed below, there has been no final decision of any District agency so Plaintiffs' "claims" are not ripe for adjudication even before the DCCA.

C.  *The Claims Of CHA Are Not Ripe For Adjudication And CHA Has Failed
To Exhaust Its Administrative Remedies*

As of the time of the filing of the instant complaint, no formal action had been taken to deny CHA full accreditation.[37]  Although, based on the results of the April 2006 site visit and other factors, the Board has made a determination to deny CHA full accreditation, at the time of the filing of the complaint, CHA still was operating under its provisional accreditation.  Moreover, the necessary procedural action – the issuance of a Notice of Intent to Withdraw Accreditation -- which will trigger CHA's opportunity for a hearing, fully protecting any due process rights, has not yet occurred.

Under 17 DCMR §5606.6(a)(1) and (2) CHA would receive a Notice of Intended Action. The Notice would inform CHA of its right to a hearing.  Service of the Notice is effectuated pursuant to 17 DCMR §4105.  Pursuant to 17 DCMR §5606.6(b)(1) and (2) the Education Licensure Commission, the public, and students at CHA are notified of the proposed action.

Thereafter, one of two courses of action may occur.  The Board may hear the matter, following the procedural process outlined in the regulations at 17 DCMR §§ 4100, *et seq.*[38]  Alternatively, pursuant to 17 DCMR §4144, the Board may delegate its authority to conduct a hearing to an ALJ.  If the ALJ's decision is adverse to CHA, it may appeal that decision to the Board pursuant to 17 DCMR §4123.  If the Board then affirms

---

[37] CHA, knowingly, intentionally, and erroneously has asserted that the Board has refused to act on CHA's application for full accreditation.  *Complaint* at ¶6.  This is patently and undisputedly not true.  As CHA well knows, and as demonstrated by the *Skinner Decl.*, the very purpose of the April 17, 2006 site visit was consideration of CHA's accreditation status.  Moreover, CHA received a copy of the report of that site visit and it was discussed with representatives of CHA at the May 2006 Board meeting.

[38] Among other procedures, the regulations provide as follows: §§ 4106 (Representation), 4107 (Motions and Other Pleadings), 4108 (Offer of a settlement conference, which is discretionary), 4109, (Description of how the hearing is conducted), 4110 (Evidence at the hearing), 4111 (Conduct of parties and counsel at the hearing), 4112 (Subpoenas), 4113 (Hearings by panels of a board) and 4117 (Decisions of a board, with right of appeal to the D.C. Court of Appeals).

the ALJ's decision, CHA would have a right of appeal to the D.C. Court of Appeals pursuant to 17 DCMR §4122 and D.C. Code §2-510.[39]

Obviously, and wholly contrary to the inferences of the complaint, there are well-defined procedural processes that fully protect the due process rights of CHA and defeat any claim for denial of due process.[40]   More importantly, for purposes of the instant Motion, the existence of these procedural processes, which have not yet been invoked or implemented because a Notice of Intended Action has not issued, requires dismissal of all CHA's claims because (1) they are not ripe for adjudication by this Court and (2) CHA has not exhausted its administrative remedies.

1.  *There is no present justiciable controversy for adjudication by this Court. CHA lacks standing since it cannot demonstrate injury in fact.*

CHA's claims all are derivative of its allegation that it is being denied full accreditation.  CHA's feared injuries, however, are too speculative at this time to satisfy the constitutional requirement of a "case or controversy" and the prudential prerequisites of standing.

To support standing, a plaintiff "must have suffered injury in fact' – an invasion of a legally protected interest which is (a) concrete and particularized,  . . . and (b) actual or imminent, not conjectural or hypothetical."  *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992)[citations and internal quotations omitted]; *Idaho Power Co. v. Federal Energy Regulatory Comm'n,* 354 U.S. App. D.C. 85, 312 F.3d 454, 459-60 (2002), *citing Lujan* and *El Paso Natural Gas Co. v. Federal Energy Regulatory Comm'n,* 311 U.S.

---

[39] The attempt by CHA to preempt the administrative process by filing what is basically a challenge to a preliminary finding of a DC licensing board under the guise of a constitutional claim also is prohibited by the *Younger* abstention doctrine.  *See, e.g., JMM Corp. v. District of Columbia*,  363 U.S. App. D.C. 160, 378 F.3d 1117, 1120 (D.C. Cir. 2004).

[40] *See, e.g., Complaint* at ¶32.

App. D.C. 52, 50 F.3d 23, 26 (1995).[41]  As the District of Columbia Court of Appeals also has recognized (relying on Supreme Court precedent), "[i]n addition, under the so-called prudential principles 'a plaintiff * * * may not attempt to litigate "generalized grievances."'" *Friends of Tilden Park v. District of Columbia*, 806 A.2d 1201, 1207 (D.C. 2002).

Separation of powers principles underlie the concept of standing, and reflect that courts should not prematurely interfere "with legislative and executive functions which have not yet proceeded so far as to affect individual interests adversely.  Accordingly, the courts should never 'anticipate a question of constitutional law in advance of the necessity of deciding it.'"  *Field*, 610 F.2d at 990 (quoting *Communist Party v. Subversive Activities Control Bd.*, 367 U.S. 1, 72 (1961).

Here, CHA cannot show any immediate or impending injury.  Not only has a Notice of Intended Action not yet issued, but, when it does, CHA will be accorded a full hearing on any decision concerning its accreditation.  The results of such a hearing, of course, are unknown at this time.  The Board or the ALJ that hears the case could decide that CHA's provisional accreditation should not be withdrawn; the Board or the ALJ could decide that CHA should be granted full accreditation.

Under any liberal reading of the Complaint, CHA's claimed injury is entirely abstract – it is not "concrete and particularized," and it is not "imminent."  Rather CHA's claimed injury is entirely "conjectural or hypothetical."  If, upon hearing, the Board or the ALJ decides that CHA should be granted full accreditation, CHA will have nothing to

---

[41] *See also Whitmore v. Arkansas*, 495 U.S. 149, 155 (1990)*, citing Warth v. Seldin*, 422 U.S. 490, 501 (1975) [plaintiff must allege an injury that is distinct and palpable, as opposed to merely abstract]; *Los Angeles v. Lyons*, 461 U.S. 95, 101-02 (1983) [alleged harm must be actual or imminent, not "conjectural" or "hypothetical."].

complain about. CHA cannot preempt the very administrative process that was put in place to protect due process rights and assume an adverse outcome in order to invoke the jurisdiction of this Court.

Here, the administrative process has not yet commenced, to say nothing of reaching a binding conclusion. As the United States Supreme Court held, "[a] claim is not ripe for adjudication if it rests upon 'contingent future events that may not occur as anticipated, or indeed may not occur at all.'" *Texas v. United States*, 523 U.S. 296, 300 (1998), *quoting Thomas v. Union Carbide Agricultural Products Co.*, 473 U.S. 568, 580-81 (1985).[42] The prospects of future injury if the Board or the ALJ decides adversely to the interests of CHA are not now sufficiently real and immediate to create a case or controversy. *See City of Los Angeles*, 461 U.S. at 102-03. Here there is no present injury at all; thus, there is no standing and CHA's claims are not ripe for adjudication. CHA's claims should all be dismissed.

*2. CHA has failed to exhaust its administrative remedies.*

CHA currently does not have standing to litigate its claims. Moreover, it has failed to exhaust its administrative remedies. This failure provides a separate and independent ground for dismissal.

Judicial precedent reflects the "'long-settled rule of judicial administration that no one is entitled to judicial relief for a supposed or threatened injury until the prescribed administrative remedy has been exhausted.'" *Convertino v. United States Department of Justice*, 393 F. Supp.2d 42, 45 (D.D.C. 2005), *citing Myers v. Bethlehem Shipbuilding*

---

[42] *See also O'Shea v. Littleton*, 414 U.S. 488, 494 (1974) and *City of Los Angeles v. Lyons*, 461 U.S. 95, 101-02 (1983)["Abstract injury is not enough. It must be alleged that the plaintiff 'has sustained or is immediately in danger of sustaining some direct injury' as the result of the challenged statute or official conduct."].

*Corp.*, 303 U.S. 41, 50-51 (1983); *see also id.* at 51 n.9 (collecting cases); *Randolph-Sheppard Vendors of Am. v. Weinberger*, 795 F.2d 90, 104 (D.C. Cir. 1986); *Utah Power & Light Co. v. ICC*, 747 F.2d 721 (D.C. Cir. 1984). "The exhaustion doctrine functions primarily to forestall the 'premature interruption of the administrative process' by the courts." *Id., citing McKart v. United States,* 395 U.S. 185 (1969). "In addition to preserving the 'autonomy of the administrative agency * * * to exercise its expertise and discretion on appropriate matters,' * * * a vigorous exhaustion requirement 'also promotes effective and efficient judicial review by ensuring that such review is of a fully developed factual record, and undertaken with the benefit of the agency's exercise of discretion or application of expertise.'"  *Id.* (*citing McKart,* 395 U.S. at 194; *Athlone Indus. v. Consumer Prod. Safety Comm.,* 228 U.S. App. D.C. 80, 707 F.2d 1485, 1488 (D.C. Cir. 1983)).

"The D.C. Circuit has explained that 'jurisdictional exhaustion,' actually limits federal court jurisdiction where 'Congress requires resort to the administrative process as a predicate to judicial review,' and is an extension of congressional power 'to control the jurisdiction of the federal courts.'" *Id., citing Avocados Plus, Inc. v. Veneman*, 370 F.3d 1243 (D.C. Cir. 2004) (citing *EEOC v. Lutheran Soc. Servs.*, 186 F.3d 959 (D.C. Cir. 1999)).

Here, of course, the administrative process has not even commenced since the triggering action – Notice of Intended Action – has not yet been served on CHA. When such action occurs, however, there is an administrative process that must be invoked by CHA if it wishes to challenge the Board's decision. At best, CHA's request for relief here is premature, even assuming it has viable constitutional claims. Thus, in the unlikely

event that this Court determines that CHA has stated a viable federal claim, the Court should abstain until the local administrative process is commenced and completed. *See JMM Corp,* 378 F.3d at 1120.

As CHA has failed to exhaust its local, administrative remedies, it claims must be dismissed.

### D. Adedokun's Claims Must Be Dismissed Or Summary Judgment Granted In Favor of Defendants

Separate and apart from the claims of CHA, Adedokun's claims must be dismissed for failure to state a claim, or summary judgment must be granted in favor of Defendants.[43]

Adedokun's claims, as set forth in Counts Three-Five of the Complaint[44] all derive from his complaint that the Board refused to approve him as the Nurse Administrator of CHA's program. Adedokun's asserted legal bases for these claims are 42 U.S.C. §1986, D.C. Code §3-1205.19, and denial of procedural due process in violation of the Fifth and Fourteenth Amendments.[45] Adedokun's claims are frivolous at best. The statutes and laws relied upon provide no legal support for Adedokun's claims and the facts, as set forth in the *Joyner* and *Skinner Decls.*, refute any suggestion whatsoever that Defendants violated any cognizable constitutional rights.

---

[43] The only Defendant against which Adedokun conceivably could have a claim is the District of Columbia, since, as explained above, the other government entity defendants are *non sui juris* and, as discussed in the next section, Defendants Joyner and Skinner are shielded from liability.

[44] Although Adedokun is referenced in the first paragraph of Count 2 of the complaint (¶24), it is clear from the allegations set forth in the subsequent paragraphs of that Count that the claim set forth therein is made only on behalf of CHA; *e.g.*, "purposeful intent to discriminate against Plaintiff Comprehensive." (¶25).

[45] Although Adedokun is referenced in the first paragraph of Count Five (erroneously numbered Count 4), it is clear from the nature of the allegations that Count Five applies only to CHA.

All of Adedokun's claims presume that he has some type of constitutional or statutory right, a cognizable property interest,[46] in being approved by the Board as the CHA Nursing Administrator. Adedokun, however, cannot provide any legal or statutory predicate for the Court to assume he had such right and, thus, the failure of the Board to approve him as CHA's administrator does not give rise to a constitutional claim.[47] Similarly, Adedokun can provide no legal or statutory predicate for the proposition that he was entitled to a hearing to determine whether he was qualified to be Nursing Administrator of CHA.

1. Adedokun's "Violation of Due Process (Conflict of Interest) Claim

With respect to Adedokun purported procedural due process claim set forth in Count 5 (mis-numbered Count 4) of the complaint, there is absolutely no basis on which Adedokun can predicate any claim that, pursuant to the Fifth and Fourteenth amendments, that he was/is entitled to a hearing to be considered Nursing Administrator of CHA. First, any analysis of his claim is limited to the due process clause of the Fifth Amendment since the Fourteenth Amendment does not apply to the District of Columbia.[48]

---

[46] As will be discussed herein, Adedokun's section 1986 claim fails because he makes no claim under section 1985 and, even if he did, that claim, too, would fail. Moreover, section 1985 requires that the claimant be injured either "in his person or property." Adedokun makes no claim that he was "injured in his person," so Defendants and this Court only can infer that he alleges an injury to "his property." Adedokun, however, has no constitutional protectible property interest in being approved the Nursing Administrator of CHA by the Board.

[47] Just so it is clear, CHA is a private employer. The Board did not dictate that Adedokun could not be Nursing Administrator of CHA; it simply decided, consistent with the regulations, that Adedokun did not have the qualifications and experience to be the Administrator of a newly established education practical nursing program to be accredited by the Board. It also should be recognized that the Board "accredits" nursing programs and the Educational Licensing Commission withdraws accreditation. Members of the ELC attended the Board meeting when it was determined not to grant CHA full accreditation. *Skinner Decl.* at ¶30.

[48] *Bolling v. Sharpe*, 347 U.S. 497, 499 (n 1954); *Hedgepeth v. Washington Metropolitan Area Transit*, 284 F. Supp.2d 145, 152 (D.D.C. 2003); *Clark v. Clark*, 638 A.2d 667, 668 n.1 (D.C. 1994); *Maye v. United States*, 534 A.2d 349, 350 n.1 (1987).

Second, it is beyond question that the due process clause of the Fifth Amendment was not intended to reach Adedokun's claim that he was entitled to "a hearing." To survive a motion to dismiss under Rule 12(b)(6), Adedokun must allege that he has been deprived of a life, liberty or property interest protected by the due process clause. *Save Our Schools*, 2006 U.S. Dist. LEXIS 45073 *50, *citing Matthews v. Eldridge*, 424 U.S. 319, 333 (1976); *Board of Regents of State Colleges v. Roth*, 408 U.S. 564, 57-72 (1972). Given Plaintiffs' inartful pleading, it is difficult to determine what interest is implicated in Count 5 (Violation of Due Process/Conflict of Interest) other than the Board's determination that Adedokun was not qualified to be Nursing Administrator of CHA and that he did not receive a hearing on this issue.

"To have a legally viable procedural due process claim," however, Adedokun must have a "'legitimate claim of entitlement'" to a property interest, rather than an abstract need or desire for it." *Save Our Schools*, 2006 U.S. Dist. LEXIS 45073, *50 n.25 *citing Roth*, 408 U.S. at 577; *Doe by Fein v. Dist. Of Columbia*, 93 F.3d 861, 868 (D.C. Cir. 1996); *Stewart v. Gaines*, 370 F. Supp.2d 293, 295-96 (D.D.C. 2005). "To determine whether such a 'legitimate claim of entitlement' to such a property interest exists, courts are instructed to look not at the Constitution, but rather at 'existing rules of understandings that stem from an independent source such as state law.'" *Id., citing Roth*, 408 U.S. at 577.[49]  Here, there is no independent source such as state law, or anything

---

[49] As the Supreme Court recognized in *Roth*, interests warranting procedural protection as property rights require something in addition to their importance to the claimant. "To have a property interest in a benefit, a person clearly must have something more than an abstract need or desire for it. He must have more than a unilateral expectation of it. He must, instead, have a legitimate claim of entitlement to it." 408 U.S. at 577.

else for that matter, that gives Adedokun a "legitimate claim of entitlement" either to be approved as Nursing Administrator of CHA by the Board or to a hearing on the issue.[50]

Third, as the *Skinner* and *Joyner Declarations*, and the documents attached thereto, make clear, Adedokun's qualifications and experience were considered at a meeting at which Adedokun was present and answered questions from the Board. The Board determined, as it had with prior candidates, that Adedokun did not have the requisite experience in curriculum development and other essential skills necessary for the administration of a newly established practical nursing program. These reasons were documented in the Board's June 14, 2005, letter to Adedokun, and accepted by CHA in its responsive letter of June 21, 2005.[51] These undisputable facts, in and of themselves, defeat any attempt by Adedokun to fabricate a due process claim.

2.  Adedokun's section 1986 Claim (Failure To Screen and Control)

Adedokun's §1986 claim fails as a matter of law. The clear and unambiguous language of §1986 requires a colorable claim under §1985 as a prerequisite to stating an adequate claim under §1986. *Thomas v. New World Communications*, 681 F. Supp. 55, 72 (D.D.C. 1988), *citing Mollnow v. Carlton*, 716 F.2d 627, 632 (9th Cir. 1983), *cert denied*, 465 U.S. 1100, *reh'g denied*, 466 U.S. 954 (1984). Adedokun has not even alleged a claim under §1985.[52] Thus, the essential condition precedent for stating a claim under §1986, namely a purported wrong against Adedokun under §1985, is not present and Adedokun's §1986 claim must be dismissed as a matter of law.

---

[50] Adedokun's patently false claim that the named Defendants have employment with an educational entity with a direct financial interest in the denial of accreditation to CHA (*complaint* at ¶36) is frivolous, wrong as a matter of fact, and irrelevant; it does not "save" his fatally defective attempt to allege a due process violation.

[51] Both documents are attached to the *Skinner Decl.*

[52] *See Complaint* at ¶25 wherein it is alleged that "Defendants DC, Joyner, Minor, and Skinner conspired with the purpose of **depriving Plaintiff Comprehensive** of equal protection of laws or equal privileges and immunities under the law with a purposeful intent to discriminate **against Plaintiff Comprehensive * * *.**"

3.  Adedokun's Claimed Violation of D.C. Law §3-1205.19

Adedokun's claim brought pursuant to §3-1205.19 also must be denied as a matter of law.  Again, to the extent Defendants understand Adedokun's pleading, the purported allegation supporting this claim appears to be that the Board did not grant Adedokun a hearing concerning its decision not to sanction his appointment as Nurse Administrator of CHA.  Not only is this claim totally frivolous, but D.C. Code §3-1205.19 does not even apply.[53]  The Board has not denied Adedokun any "license" which is all that the section reaches.  Indeed, the Board has not even "denied" Adedokun the right to be the Nursing Administrator of CHA – that is a decision to be made by CHA, a private employer.  The only decision the Board made is that if CHA sought full accreditation, someone other than Adedokun would need to be the Director of the program.

E.  *Defendants Scipio-Skinner and Joyner Are Shielded From Liability*
    *By Qualified Immunity And The Claims Against Them Should Be Dismissed*

Should this Court decide not to grant the instant motion to dismiss or in the alternative for summary judgment, it should dismiss the individually named government employees, Skinner and Joyner.[54]  It is well-established that qualified immunity shields

---

[53] §3-1205.19 provides in pertinent part that "[b]efore a board denies an applicant a license * * * it shall give the individual against whom the action is contemplated an opportunity for a hearing before the board * * *.

[54] United States Supreme Court precedent makes clear that in analyzing claims of qualified immunity, courts must begin by determining "whether the plaintiff has alleged a deprivation of a constitutional right at all."  *County of Sacramento v. Lewis*, 523 U.S. 833, 842 n.5 (1988).  Only upon finding that the purported constitutional right exists should a court proceed to the determination of whether the constitutional right was clearly established at the time of the official action.  *Conn v. Gabbert*, 526 U.S. 286, 290-91 (1999)(["A] court must first determine whether the plaintiff has alleged the deprivation of an actual constitutional right at all, and, if so, proceed to determine whether that right was clearly established at the time of the alleged violation.").  Deciding the constitutional question before addressing whether a right was clearly established "promotes clarity in the legal standards for official conduct, to the benefit of both officers and the general public."  *Wilson v. Layne*, 526 U.S. 603, 609-10 (1999). Here, as demonstrated above, none of CHA claims are ripe for adjudication and Adedokun has failed to state any cognizable constitutional claims to be addressed by this Court.

government officials from liability for civil damages. *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). *See also Farmer v. Moritsugu*, 163 F.3d 610, 613 (D.C. Cir. 1998). Where an official's conduct is objectively reasonable in light of existing law, that official will enjoy protection from liability. *See Anderson v. Creighton*, 483 U.S. 635, 639 (1987). Where, however, "an official could be expected to know that certain conduct would violate statutory or constitutional rights," that official may be vulnerable to suit by one who suffers injury resulting therefrom. *Harlow*, 457 U.S. at 819.

"It is not enough simply to allege the violation of a conceptually broad right, such as the right to Due Process . . . ." *Scott v. District of Columbia*, 1999 U.S. Dist. LEXIS 21616, *26 (D.D.C. 1999).[55] An official is entitled to summary judgment on qualified immunity grounds unless "the contours of the right [were] sufficiently clear that a reasonable official would [have] understood that what [she was] doing violated that right." *Harris v. District of Columbia*, 932 F.2d 10, 13 (1991) (quoting *Anderson*, 483 U.S. at 640).[56] *See also Save Our Schools*, 2006 U.S. Dist. LEXIS 45073, *40 and cases cited therein.

Thus, under *Harlow* and its progeny, the doctrine of qualified immunity shields a government official's "discretionary functions" as long as "their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." 457 U.S. at 818. Questions of qualified immunity should be resolved "at the earliest possible stage of the litigation." *Hunter v. Bryant*, 502 U.S. 224, 227 (1991).

---

[55] *See also Anderson v. Creighton*, 483 U.S. 635, 639-40 (1987).
[56] Indeed, the United States Supreme Court made clear that, "[u]nless the plaintiff's allegations state a claim of violation of a clearly established law, a defendant pleading qualified immunity is entitled to dismissal before the commencement of discovery." *Mitchell v. Forsyth*, 472 U.S. 511, 536 (1985). "[Q]ualified immunity is 'an entitlement not to stand trial or face the other burdens of litigation.'" *Saucier v. Katz*, 533 U.S. 194 (2001)[*citing Mitchell*, 472 U.S. at 526].

Moreover, qualified immunity takes into account the fact that reasonable government employees may make reasonable mistakes. *Anderson*, 483 U.S. at 641. Thus, where employees of "reasonable competence" could disagree on the issue, qualified immunity "should be recognized." *Malley v. Briggs*, 475 U.S. 335, 341 (1986).

As discussed above, the allegations of the complaint failed to support any claim that any of the Defendants violated Plaintiffs' constitutional or statutory rights. Even *assuming arguendo* that such a claim could be sustained sufficient to overcome the instant Motion, Defendants Joyner and Skinner are protected by qualified immunity unless Plaintiffs' allegations could sustain a finding that their conduct violated clearly established law. *See Harlow,* 457 U.S. at 818. Here, Plaintiffs fail to allege that Defendants Skinner and Joyner violated any clearly established federal (or local) law of which a reasonable person in their respective positions should have known. Indeed, there is no law that has been violated by any of the Defendants. Rather DCMR 17-5600, *et seq.*, especially section 5607 applicable to practical nursing programs, clearly provides the standards that must be met for accreditation and gives the Board the discretion to deny or withdraw accreditation if the program fails to meet these criteria. *See* 17 DCMR §5606.

Defendants Joyner and Skinner participated in a Board proceeding which applied the criteria of the regulations and resulted in a determination that CHA should not receive accreditation.[57] Further, after review of his qualifications and experience, the Board, not Skinner and Joyner, made the decision that Adedokun was not qualified to be Director of CHA. The *Skinner* and *Joyner Declarations* make clear that the Board was following

---

[57] As noted in the *Skinner Declaration*, these two Defendants did not even vote on matters affecting CHA's accreditation.

well-established regulations in deciding not to grant CHA full accreditation. Similarly, the decision not to approve Adedokun as Program Director was consistent with prior decisions respecting other potential candidates for that position which CHA has presented for consideration. Participation in such decision-making processes does not give rise to a cognizable constitutional cause of action or any other claim, much less a violation of clearly established law. *See Harlow*, 457 U.S. at 818. The Court simply cannot conclude that Defendants' participation in this decision-making process violated any "'clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Save Our Schools*, 2006 U.S. Dist. LEXIS 45073 * 43, *citing Crawford-El v. Britton*, 523 Y.S. 574, 588 (1988).

If the "clearly established law" on which Plaintiffs' contentions rest is procedural due process and equal protection, Defendants' actions plainly do not give rise to the level necessary to sustain a constitutional claim. Indeed, the *Skinner* and *Joyner* Declarations and documents attached thereto demonstrate unequivocally that Plaintiffs were accorded due process before decisions were made concerning CHA's accreditation and Adedokun's consideration as Program Director. No reasonable official in Defendants' situation could believe that their conduct violated any of Plaintiffs' constitutional rights.

It is clear that application of United States Supreme Court precedent[58] is based upon the necessity to shield government employees from the very type of lawsuit Plaintiffs filed here –

> It has been thought important that officials of the government should be free to exercise their duties unembarrassed by the fear of damage suits in respect of acts done in the course of those duties – suits which would consume time and energies which otherwise would be devoted to

---

[58] *Harlow*, 457 U.S. at 877-78; *Butz v. Economou*, 438 U.S. 478, 507-08 (1978); and *Mitchell*, 472 U.S. at 536.

> government service and the threat of which might appreciably inhibit the
> fearless, vigorous, and effective administration of policies of government.

*Barr v. Mateo*, 360 U.S. 564, 571 (1959). It is equally clear that officials such as Joyner

and Skinner would be reluctant to exercise their respective duties in light of the countless

actions and decisions that they have to make if they had to fear that lawsuits would flow

from every action, decision, or recommendation made with respect to the accreditation of

[educational] nursing programs in the District.[59]

Plaintiffs utterly fail to allege, much less demonstrate, that Defendants' conduct

was objectively "unreasonable" in light of existing law. Defendants merely were

following well-established regulations applicable to the accreditation of practical nursing

programs. No facts, as opposed to fabrications, have been recited by Plaintiffs to

establish that these Defendants violated any clearly established federal law or

constitutional rights, which a reasonable official in their respective positions would have

known. Consequently, Skinner and Joyner are entitled to protection from liability. *See*

*Anderson*, 483 U.S. at 639.

Finally, the District asserts that exposing Skinner and Joyner to personal liability

under the facts of this case would be at odds with the policies underlying the doctrine of

qualified immunity. *See Harlow*, 457 U.S. at 806, 814. The risk of personal liability

would make it virtually impossible for governments to fill positions such as those

occupied by the individual defendants here, as few qualified persons would be willing to

assume such responsibility with the accompanying risks of liability. The District cannot

---

[59] In *Butz v. Economou*, 438 U.S. 478, 508 (1978), in order to shield Government officers, the Court admonished lower courts applying the qualified immunity standard to engage in "firm application of the Federal Rules of Civil Procedure [to] ensure that federal officials are not harassed by frivolous lawsuits", the very situation present here.

be expected to operate in this way, and government officials should not be expected to assume this type of liability. *See Farmer*, 163 F.3d at 616.

Plaintiffs' claims against the individual defendants should be dismissed.

### III. CONCLUSION

The claims brought against the various Defendants both are premature and fail as a matter of law. Moreover, any dispute as to the accreditation of CHA, when it is ripe for adjudication, is essentially a local claim which predominates over any attempt by Plaintiffs to construct, out of whole cloth, a constitutional claim. Plaintiffs' remedies, if any, and at the appropriate time, are before the District of Columbia Court of Appeals.[60]

For all the foregoing reasons, Defendants move to dismiss the complaint or, in the alternative, for summary judgment. Alternative proposed Orders are attached hereto.

Respectfully submitted,

ROBERT J. SPAGNOLETTI

Attorney General, D.C.

GEORGE C. VALENTINE
Deputy Attorney General, D.C.
Civil Litigation Division

_____/s/ Richard S. Love_____
RICHARD S. LOVE, D.C. Bar No. 340455
Chief, Equity I
441 Fourth Street, N.W., 6th Floor South
Washington, D.C. 20001
Telephone: (202) 724-6635
Facsimile: (202) 727-0431

_____/s/ Ellen A. Efros_____

---

[60] *See, e.g., Barwood v. District of Columbia*, 202 F.3d 290, 296 (D.C. Cir. 2000); *Grano v. Barry,* 733 F.2d 164, 169 (D.C. Cir. 1984).

ELLEN A. EFROS, D.C. Bar No. 250746
Assistant Attorney General
Equity 1
441 Fourth Street, N.W., 6th Floor South
Washington, D.C. 20001
Telephone: (202) 442-9886
Facsimile: (202) 727-0431
ellen.efros@dc.gov