UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

COMPREHENSIVE HEALTH ACADEMY, LLC,
d/b/a COMPREHENSIVE HEALTH ACADEMY
SCHOOL OF PRACTICAL NURSING, *et al.*

EXHIBIT B-SKINNER DECL.

Plaintiffs,

v.

Civil Action No. 1:06cv01050
(RBW)

DISTRICT OF COLUMBIA, *et al.*

Defendants.

---

## DECLARATION OF KAREN SCIPIO-SKINNER IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS OR, IN THE ALTERNATIVE, FOR SUMMARY JUDGMENT

I, Karen Scipio-Skinner, under penalty of perjury, declare as follows:

1.     I am the Executive Director of the District of Columbia Board of Nursing ("the Board"). I have read and reviewed the Complaint filed by Comprehensive Health Academy, LLC ("CHA") and Michael Adedokun ("Adedokun") and I have personal knowledge of all facts stated herein. I provide the following chronology of events commencing with the provisional accreditation of CHA as well as responses to the allegations of the complaint.

2.     On July 2, 2003, at a meeting of the Board, CHA was granted one (1) year provisional accreditation as a practical nursing program. Delloise Saunders was to be Director of Nursing, Full-time Program Director. Ms. Saunders had a Master's in nursing and, among other criteria, had extensive experience in nursing education, with emphasis on curriculum development. Ms. Saunders received notification of the accreditation status on July 10, 2003.

3.    On October 28, 2003, I received a communication from Mr. Oboh, President/CEO of CHA, that Ms. Saunders was replaced, effective October 20, with Dr. Green who would assume the responsibilities of Director of the CHA Nursing Program. I spoke with Dr. Green about meeting with the Board and was informed that she was not sure how much longer she would continue at CHA.

4.    On January 26, 2004, I received a complaint from Mr. Oboh regarding the conduct of Dr. Green concerning events that took place during her tenure as Director of the Nursing Program at CHA. At an April 7, 2004 Board meeting the charges against Dr. Green were reviewed and an investigation requested. At that meeting, the Board also decided to request that CHA submit their verification process for hiring newly licensed employees. The same request was made to all LPN programs.

5.    On May 13, 2004, I, on behalf of the Board, sent Oboh a letter requesting an explanation as to how CHA was utilizing its Director of Nursing. The Board had been advised that a Meena Kuman was Director of Nursing when, in fact, the Director was a Tequila Langham. CHA was to respond by May 21, 2004, with a copy of the Director of Nursing's resume. On June 23, 2004, Langham submitted her resignation as Director of Nursing of CHA. CHA did not inform the Board of this resignation or otherwise respond to my May 13, 2004, communication.

6.    On July 14, 2004, I, on behalf of the Board, and being unaware of the fact that Ms. Langham had resigned, sent her a letter advising that a provisional status report and survey visit were due for CHA. In fact, prior to sending this communication, CHA was asked who the Director of Nursing was so that the Board could send that person notification of the site visit. CHA responded that Ms. Langham was the appropriate

person to whom the communication should be directed. In the July 14, 2004, communication, Ms. Langham further was advised that the Board and the Educational Licensure Commission was to conduct the joint visit the week of August 2, 2004, and requested certain information be sent to the Board in anticipation of the survey visit.

7.      On July 18-25, I received a series of emails from Ms. Langham concerning her resignation from CHA.

8.      A report of the site visit of August 2 and 3, 2004 was prepared by Bonita Jenkins, Nursing Education Consultant. Among other things the report discussed the fact that there was no Director of Nursing and that the Program Administrator was not able to adequately present the programs to the visitors. The report focused on a number of deficiencies and omissions in the CHA Practical Nursing Program.

9.      On October 5, 2004, the Board received a letter from Oboh addressing the site visit report and on October 6, 2004 the Board met with Adedokun and Oboh to discuss the site visit. At that meeting, the Board made clear that CHA was expected to hire an administrator that meets Board approval. On October 14, 2004, the nurse consultant, Ms. Jenkins, responded to CHA's comments concerning the August site visit report.

10.     Thereafter, on October 18, 2004, the Board sent Adedokun a letter concluding that there still were significant areas (based on the regulations) that needed improvement before CHA's approval status is upgraded. (A copy of that letter is attached to this Declaration). That letter also requested additional documentation.

11.     On November 4, 2004, CHA was notified by the Board of its continuation of Provisional Accreditation and that a decision respecting Full Accreditation would be

made following graduation of CHA's first class and would be based upon NCLEX-PN

pass rates of CHA's graduates as well as continued compliance with the regulations set

forth in Chapter 56 of the DCMR.

12.    On April 14, 2005, Dr. Joyner, Chairperson of the Board, sent Adedokun,

Acting Director of Nursing of CHA, a letter informing him that at its April 6, 2005,

meeting the Board voted to request that a Notice of Intent be prepared by the Office of

the Attorney General to withdraw CHA's provisional accreditation because of CHA's

failure to comply with section 5604.2(a) requiring a qualified administrator who is a

registered nurse with additional education and experience necessary to direct the program

and who is accountable for the administration, planning, implementation, and evaluation

of the program.    The April 14, 2005 letter reminded Adedokun that at the Board's

October 2004 meeting it had been made clear that CHA was expected to hire an

administrator that meets the Board's approval and, as of this time, the Board had not been

notified that a Director of Nursing had been hired.    A copy of this letter is attached

hereto.

13.    By letter dated May 16, 2005, Oboh notified Joyner that effective

immediately Adedokun had assumed the full duties and responsibilities of Program

Administrator and also requested that CHA be considered for Permanent Accreditation.

I, on behalf of the Board, responded on May 19, 2005, informing Oboh that the Board

would review Adedokun's resume to determine if he meets the regulatory requirements

for Program Administrator and, also, explained that the Board does not grant Permanent

Accreditation; that it only has the authority to grant Full or Conditional Accreditation.

The May 19, 2005 communication reminded CHA that at the  May 13, 2005 meeting and

the April meeting, the Board discussed CHA's accreditation status and determined that it was out of compliance with section 5604.2(a) requiring the program to have a qualified administrator. This communication also informed CHA that NCLEX-PN pass rates is not the only regulatory requirement considered by the Board when making accreditation decisions. The letter informed Oboh that the request to consider Adedokun as Administrator would be on the Board's agenda for June 1, 2005 and invited Mr. Adedokun to attend. A copy of this letter is attached hereto.

14.    Adedokun was interviewed by the Board on June 1, 2005. Oboh also attended this meeting. The issue before the Board was whether to deny CHA accreditation. It was determined that Adedokun's experience did not comply with section 5607.3(c) which requires, among other things, that the nursing administrator "have educational preparation or experience in teaching, curriculum development, and administration, including a minimum of two (2) years of post-graduate clinical experience." It was the decision of the Board that Adedokun (a) lacks experience as a nursing school administrator; (b) lacks experience in curriculum development and evaluation of the total program; and (c) is not able to articulate levels of objectives for CHA's theoretical framework. These findings all are set forth in the Board's meeting minutes of June 1, 2005.

15.    On June 2, 2005, the Board received complaints respecting perceived discrimination as to treatment of Adedokun, Oboh, and CHA concerning the Board's decision. On June 14, 2005, the Board, through Joyner, and the Board of Nursing Education Committee, through its Chairperson, responded to Adedokun's letter of complaint. The June 14, 2005, response informed Adedokun that it was not the intent to

discriminate against Adedokun or "humiliate" him. Rather, the purpose of the meeting was to determine whether or not he met the qualifications to be the Nursing Administrator of CHA. This communication made clear that particularly because CHA was a newly established program, a major factor considered by the Board is the qualifications of the Administrator. The June 14, 2005 letter also reminded Adedokun that when he and Oboh met with the Board in an effort to obtain Initial Accreditation, several persons were presented with master's degrees and considerable clinical experience that were not approved by the Board because they did not have experience in administering an educational program and they lacked knowledge in curriculum development.

The Board's questions to Adedokun were directed to determining his understanding of curriculum development, integrating theory into practice, program evaluation, and other essential skills needed by a program administrator of a newly established practical nurse program. The Board concluded that Adedokun did not have these skills, but gave CHA an additional six (6) months, by no later than December 15, 2005, to hire an administrator with the requisite skills, submit their resume, and meet with the Board for approval. A copy of this letter is attached.

16.     CHA responded, through, Oboh, on June 21, 2005, accepting the Board's decision respecting Adedokun and submitting the resume of Rachael Rizzo as Director of Nursing for CHA. The Board responded on July 13, 2005, and requested that Ms. Rizzo meet with the Board on September 7, 2005. On July 15, 2005, I contacted Ms. Rizzo concerning a number of complaints that a group of students had discussed with me concerning CHA and I requested a response.

17.    At the September 7, 2005 Board meeting, the complaints of the CHA students were discussed and approval of Rizzo's appointment was "tabled." By letter dated September 26, 2005, Oboh was informed that a final decision as to Rizzo had not yet been made.

18.    On February 15, 2006, Rizzo was informed that in conjunction with Board's consideration of CHA for Full Accreditation, the Board and the Educational Licensure Commission was scheduling a joint site visit for April 17, 2006.

19.    A site visit was conducted on April 17, 2006. Donna Minor, a MSN, RN-Board of Nursing education consultant, and Mr. Rick Garcia, MS, RN CCM, Board education committee chairperson attended.    Thereafter, Minor prepared a report addressing some of the strengths and weaknesses identified during the site visit (copy attached hereto).

20.    On May 3, 2006, the Board considered CHA's pending request for Full Accreditation.  Attending the meeting were Rizzo, Adedokun, and Oboh.  The Board determined to deny accreditation to CHA based on the following factors reflected in the Board's meeting minutes: (a) lack of data of students who enter, progress, and graduate from the program; (b) lack of evidence of clinical competencies prior to entering a clinical setting; (c) lack of faculty in test design and evaluation only done by the Director Nursing and Program Administrator doing primary design; and (d) lack of consistent formative evaluation during the program to identify at-risk students for academic failure.

21.    With respect to the specific allegations of the complaint (*see, e.g.*, ¶¶ 6, 9 21, 22, 23, 25 [and subparts thereof], 27, 32, and 36, the foregoing chronology of events demonstrates that (a) the Board has not refused to act upon CHA's request for Full

Accreditation; (b) the Board has not discriminated against CHA or its principals; (c) the Board repeatedly has provided articulate and rational reasons, consistent with the applicable regulations, as to the deficiencies in CHA's nursing program; and (d) both Adedokun and CHA have been given multiple opportunities to appear before the Board to discuss the accreditation status of CHA.

22.    The documents of record demonstrate that the Board's refusal to sanction the appointment of Adedokun as Nurse Administrator of CHA was made because he did not have the required experience or skill set to administer a newly established nursing program.  Neither Adedokun's race nor nationality, nor that of Oboh, ever was discussed as a reason not to fully accredit CHA or to approve Adedokun as Administrator. The Board's decision to deny Full Accreditation to CHA was based on deficiencies in its program and failure to comply with the applicable regulations.

23.    The Board has not "threatened" to withdraw Provisional Accreditation nor has it denied CHA due process.  The Board has voted to deny accreditation. As part of the denial process, once CHA receives a Notice of Intent, CHA has the opportunity to request a hearing with full procedural safeguards and rights pursuant to the regulations.

24.    The individuals named as defendants, Joyner, myself (Skinner), and Minor did not vote to deny CHA accreditation.  As the Chairperson, Dr. Joyner, does not vote on matters regarding nursing schools. Neither I nor Ms. Minor are Board members and, therefore, we are not authorized to vote.  Ms. Minor and Board member, Rick Garcia, participated in the April 2006 site visit and submitted a report to the Board.  CHA was invited to and attended the meeting at which the site visit was discussed. A copy of the report was sent to CHA in advance of that meeting.

25.    The decision to deny CHA accreditation was based on the reasons discussed above in ¶ 20, previous issues the Board had with the functioning of CHA, complaints from students, and the interview with representatives of CHA.

26.    The allegation of the complaint (¶ 20) that the Board is the "DC agency charged with investigating, evaluating, and granting accreditation to any educational institution seeking to operate within the District of Columbia for the purpose of training Practical Nurses * * *," is erroneous. The Board does not have the authority to grant accreditation to institutions; it only has authority to approve nursing programs that are offered by educational institutions that have been licensed by the District's Educational Licensing Commission.

27.    The allegation of ¶21 of the complaint that states that CHA is the "highest rated school" in DC also is misleading.  CHA's NCLEX board scores are high, but the NCLEX pass rate is not the only criteria evaluated by the Board when considering Full Accreditation and CHA was informed of this fact.  NCLEX is the licensure examination for practical nurses and professional nurses. The Board, as are Boards of Nursing in other states, is charged with approving nursing programs to assure the quality of the educational program and, in particular, the clinical aspects of the program, which are not measured by the written examination.

28.    The above chronology and the many communications between CHA and the Board over the last several years demonstrate that the allegations of the complaint that the Board has asserted purported deficiencies in CHA's program "which are entirely "pretextual" and  * * * to cover up the true basis for the its denial of full accreditation which is discrimination against CHA, its owners and employees and Adedokun on the

basis of their race or national origin," (*complaint* at ¶23) is demonstrably untrue. As the foregoing chronology demonstrates, all of which is supported by documents in the Board's CHA file, there have been consistent and repeated communications between the Board and CHA concerning its non-compliance with the applicable regulations for several years. If the allegations of the complaint were true, the Board had many previous opportunities not to consider CHA for accreditation. To the contrary, CHA was allowed numerous opportunities to comply with the regulatory requirements.

By way of example, when CHA first submitted its proposal to operate a nursing program, they were given an opportunity to correct deficiencies in the proposal. In addition, CHA presented several persons they planned to appoint as Nursing Administrator that had master's degrees in nursing. The Board repeatedly told CHA that just having a master's degree in nursing was not sufficient; the Nurse Administrator had to have experience in managing a Practical Nursing Program.

Once Provisional Accreditation was granted, CHA had a frequent turnover of Nurse Administrators. Indeed, as discussed above, at certain points in time, the Board did not know, and notwithstanding requests, was not kept informed as to the person responsible for the position of Nurse Administrator. The Board could have withdrawn accreditation because CHA did not have a Nurse Administrator for a period of time, but, instead, allowed it additional time to hire a qualified person for the position.

29. I have no association whatsoever with the licensed practical nursing program at UDC. I have never taught in that program and I have never advised any student for or against enrolling in the CHA program.

30. Finally, it should be recognized that the Board "accredits" nursing programs and the Educational Licensing Commission withdraws accreditation. Representatives from ELC attended the Board meeting when it was determined not to grant CHA full accreditation.

31. The documents attached hereto are true and accurate copies of documents maintained in the Board's file pertaining to CHA.


I declare under penalty of perjury that the foregoing is true and correct.

Executed on: 7/25/06

Karen Scipio-Skinner

# Government of the District of Columbia
## Department of Health



Health Professional Licensing Administration
**Board of Nursing**

May 19, 2005

Sonny Oboh
President/CEO
Comprehensive Health Academy School of Practical Nursing
1106 Bladensburg Road, NE
Washington, DC 20002-2512

Dear Mr. Oboh,

On behalf of Dr. Joyner I am responding to your letter dated May 16, 2005 regarding your application for p
accreditation. Thank you for notifying the Board that Mr. Adedokun has been appointed your Program Adm
and submitting his resume. The Board will review Mr. Adedokun's resume to determine whether or not he r
Board's regulatory requirements.

You have asked that CHA be considered for "Permanent Accreditation". Once a program has achieved init
accreditation the board only has the authority to grant Full or Conditional Accreditation. The Board does n
permanent accreditation. The continued accreditation status of each program is reviewed at least annually.
discussed with you and Mr. Adedokun during our meeting May 13, 2005, at its April meeting the Board rev
your accreditation status and determined that your program was out of compliance with regulatory requiren
5604.2 (a), (1). This section requires your program to have a qualified administrator. Please note that while
Board is pleased that your graduates have received an excellent NCLEX-PN pass rate, this is not the only r
requirement considered by the Board when making accreditation decisions.

I will submit your letter along with Mr. Adedokun's resume to the Board for review. Your request for con
of Mr. Adedokun as Administrator of CHA will be on the Board's agenda, Wednesday, June 1, 2005 at 10
Mr. Adedokun is invited to attend.

If you have any questions or need additional information please feel free to contact me at 202.724.8818 o
karen.skinner@dc.gov.

Sincerely,

Karen V. Scipio-Skinner, MSN, RN
Executive Director

cc.     Dr. JoAnne Joyner
        Chairperson, DC Board of Nursing

        Ladan Eshkevari
        Chairperson, DC Board of Nursing Education Committee

# Government of the District of Columbia
## Department of Health



**Health Care and Regulation and**
**Licensing Administration**
**Board of Nursing**

October 18, 2004

Michael Adedokun, BSN, RN,C, CRNI
Acting, Director of Nursing
Comprehensive Health Academy
1106 Bladensburg Road, NE
Washington, DC 2002-2512

Dear Mr. Adedokum:

The Board of Nursing has reviewed the site visit report resulting from the visit made by the nursing education consultant (Ms Bonita Jenkins) on August 2 and 3, 2004. In addition, we have considered your presentation of facts at the Board meeting held October 6, 2004. The findings of the consultant were based on the old regulations, which were in effect at the time of the schools opening. Considering both reports, the Board has concluded that there are still significant areas (based on the regulations) that need improvement before your approval status is upgraded. Please find listed below the areas where documentation needs to be submitted to confirm satisfactory compliance in these areas.

Since you stated in your presentation on October 6th that these things are in place, we are requesting the appropriate documentation within five (5) working days from receipt of this letter.

5601.1    The school's curriculum shall reflect the philosophy, conceptual framework, purpose and objectives of the nursing education program and shall be consistent with this chapter.

Philosophy
**No recommendations**

Conceptual Framework
**Show evidence of integration of conceptual framework into curriculum**

5601.5    Curriculum Evaluation
**Show evidence of a plan for program evaluation.**

---

**Show evidence of contract with acute care hospital.**

**Provide hours for classroom and clinical instruction.**

2.1    Clinical laboratory experiences shall be an integral part of the curriculum. Clinical experiences shall be in the following areas:
**Show evidence of clinical experience in the areas of the care of surgical patients, the care of children, and the care of mothers and newborns.**

)4. 2    Program Administrator
**Submit resume of a Nursing Director that meets the requirements of this section. Submit organizational chart.**

Faculty
**Submit list of full-time faculty and part-time faculty. Indicate faculty's clinical experience and courses they are assigned to teach.**

stly, please be aware and advised that your first class is expected to graduate November 2004 and their performance on NCLEX-PN will also be included in consideration for approval status upgrade.

Respectfully,

Connie M. Webster, MSN, DNSc, RNC
Chairperson, D.C. Board of Nursing

# Government of the District of Columbia
## Department of Health

**Health Care Regulation and
Licensing Administration
Board of Nursing**



April 14, 2005

Michael Adedokun, BSN, RN,C, CRNI
Acting, Director of Nursing
Comprehensive Health Academy
106 Bladensburg Road, NE
Washington, DC 2002-2512

Dear Mr. Adedokun,

This is to notify you that at its April 6, 2005 meeting the Board of Nursing voted to request that a Notice
of Intent be prepared by the Office of the Attorney General to withdraw your provisional accreditation
because the following regulatory requirement has not been met:

> *(5604.2 (a), (1)) A qualified administrator of the nursing education program shall be a
> Registered Nurse licensed in good standing in the District of Columbia with the
> additional education and experience necessary to direct the particular program
> preparing graduates for the safe and effective practice of nursing. The administrator is
> accountable for the administration, planning, implementation, and evaluation of the
> nursing education program.*

At the Board's October 2004 meeting with CHA board members made it clear that CHA was
expected to hire an administrator that meets the Board's approval. As of this date the Board has
not been notified that a Director of Nursing has been hired. You therefore are out of compliance
with this regulatory requirement.

Sincerely,

JoAnne Joyner, DNSc, APRN,BC
Chairperson
Board of Nursing

☒003

JUN-28-2006  15:41          DCOCC                                    2027276546    P.03/

## Government of the District of Columbia
### Department of Health

**Health Professional Licensing Administration**
**Board of Nursing**



June 14, 2005

Michael Adedokun, BSN, RN,C, CRNI
Program Administrator
Comprehensive Health Academy
106 Bladensburg Road, NE
Washington, DC 2002-2512

Dear Mr. Adedokun,

This is in response to your letter to Dr. JoAnne Joyner, Chairperson of the DC Board of Nursing, dated June 2, 2005, in which you lodge a complaint of "discrimination, prejudice and mental humiliation". Please know that during the Board of Nursing's June 1, 2005 meeting with you it was not the intent of Board members or staff to discriminate against you or humiliate you. As noted in the letter sent to Mr. Sonny Oboh dated May 16, 2005, the purpose of the meeting was to determine whether or not you meet the qualifications to be the nurse administrator for CHA.

While the Board is pleased to note the high passing rate of your students, please know that the passing rate is but one of the criteria the board considers when making a decision to accredit a program. Particularly as a newly established program, a major factor that the Board considers is the qualifications of the nurse administrator. As you are aware, establishing a new program is much more rigorous than administering an established program.

As you will recall when you and Mr. Oboh came before the Board in an effort to obtain Initial Accreditation you brought several persons with master's degrees and considerable clinical experience that were not approved by the Board because they did not have experience in administering an educational program and they lacked knowledge in curriculum development. So, while the Board applauds your efforts at continuing your education and receiving a master's degree in nursing, please know that a master's degree is not enough. The Board's questions were an effort in obtaining your understanding of curriculum development, integrating theory into practice, program evaluation and other essential skills needed by a program administrator of a newly established practical nurse program.

In the opinion of the Board of Nursing you do not have the aforementioned skills and knowledge. The Board therefore will allow CHA six (6) months from the date of this letter or no later than December 15, 2005, to hire an administrator with the requisite skills, submit their resume and meet with the Board for Board approval. If this not provided in a timely manner the Board will move forward with denial of accreditation of CHA.

Also please note, once the Director of Nursing is approved by the Board he/she will need to provide an improvement plan to address increasing the numbers of students able to graduate and sit for examination. The improvement plan might include revision of the admission criteria, curriculum revision, or more effective remedial offerings. The improvement plan will be required to be submitted to the board for review.

Sincerely,


JoAnne Joyner, DNSc, APRN,BC
Chairperson, Board of Nursing


Ladan Eshkevari, CRNA, MS
Chairperson, Board of Nursing Education Committee

cc. Sonny Oboh, CHA
    Dr. Rolin Sidwell, ELC
    Dr. Feseha Woldu, DOH/HPLA



# COMPREHENSIVE HEALTH ACADEMY
## School of Practical Nursing

1106 Bladensburg Road • N.E. Washington, DC 20002-2512

June 21, 2005

Dr. JoAnne Joyner,
Chairperson, DC BON
717 14TH Street, NW, Suite 600,
Washington, DC 20005

Dear Dr Joyner,

RE: PROPOSAL ON THE APPOINTMENT OF A QUALIFIED
DIRECTOR OF NURSING (RACHAEL RIZZO) FOR CHA

Your letter dated June 14, 2005 was received on June 16, 2005 and the board's decision
regarding Mr. Michael Adedokun's position as the program's administrator as
communicated therein is respected and accepted. I also want to express my profound
gratitude to the board for the good gesture of generously giving CHA six months to hire a
qualified director of nursing. In order to move swiftly to implement the
recommendations of the board, I hereby propose to the board the appointment of Mrs.
Rachael Rizzo as the director of nursing for CHA. The choice of Mrs. Rizzo to fill this
position is based on the following reasons:

(1) Extensive experience in curriculum development: Before relocating to
Washington DC with her husband, she was a faculty member in practical nursing
programs in Connecticut and Florida during which time she was involved in the
development of the curriculum. She has also been involved in nursing education
at various health care facilities.
(2) A founding faculty member at CHA: Mrs. Rizzo has been a member of faculty at
CHA since its inception. She has worked as faculty coordinator and assistant
director of nursing at various times. She is also a huge part of the curriculum
development and the continuous evaluation of the program at CHA from the very
beginning to the present.
(3) Hard working and dependable: Mrs. Rizzo is very knowledgeable about her job,
dependable and highly productive. Students and faculty can testify to these
sterling qualities.

(4) Mrs. Rizzo has a master's degree in education and also has 18 credits to date towards a master's in nursing.

If considered for this position, I assure the board that she will be given the necessary tools and resources to enable her succeed. Michael will also be available to assist her wherever necessary to enhance her ability.

Lastly, I have enclosed a detailed analysis of the admissions, retention, and graduation profile of CHA for the board's information. Once again I thank the entire board member for giving me the opportunity to start a new cordial working relationship.

Attachments:
   (1) Mrs. Rachael Rizzo's resume
   (1) Admissions, retention, and graduation profile for CHA.


Sincerely,


Sonny Oboh
President/CEO


Cc. Karen V. Scipio-Skinner, RN, MSN
    Executive Director, DC BON

## E Rachael Rizzo/Mitzner

2600 Pennsylvania Ave. NW
Washington, D.C. 20037
Home Phone (202) 944-3341
Rachael_rizzo@msn.com

## EMPLOYMENT

**INSTRUCTOR**                                      2003 - present
*Comprehensive Health Academy*                      *Washington, D.C.*

- Planned and implemented class curriculum for Medical- Surgical Nursing, Nutrition, Micro and Pharmacology.
- Reviewed and revised course syllabi as text books changed and content was reviewed and revised
- Organized course calendars to present courses in the designated time frame to students and faculty.

**EDUCATION DIRECTOR**                              2001 - 2003
*Rue Educational Publishers Inc*                    *Clearwater, Fl. 33759*

- Revised and updated directed study systems prepared to assist students succeed in the nursing courses required to graduate from Excelsior College's external degree ASN Program, and sit for the RN licensing exam.
- Revised and updated study guides for students preparing for Excelsior College's BSN Program.
- Prepared a directed study system for a new management course offered as part of Excelsior College's BSN external degree program.
- Acted as a nursing resource for the companies marketing department, educational counselors and clients.
- Scripted a clinical video to prepare students for the Clinical Practice Nurse Exam through Excelsior College and acted as the professional consultant during filming and editing.
- Planned and implemented a workshop for students preparing to take the Clinical Practice Nurse Exam through Excelsior College.

**DIRECTOR OF EDUCATION**                           2001
*Harborside Health Care / Compass Health Care*      *Palm Harbor, Fl.*

- Ensured that the state educational requirements were in compliance for nine long term care facilities throughout the state of Florida.
- Updated and maintained a computer based educational system for the nine facilities.
- Worked closely with the ADON on orientation of staff, infection control and educational compliance of st
- Established and implemented a quarterly meeting for ADON's to ensure ongoing education related to responsibilities and support.
- Worked closely with the clinical nurses and PPS specialist to assess need and educate administrative and nursing staff in compliance issues.
- Participated in Mock surveys in several of the nine Facilities.
- Wrote and implemented educational programs on Alzheimer's Disease, Pain Management, Physical assessment and Falls.

**DIRECTOR OF NURSING**                                        1999-2001
*Richey Manor Nursing and Rehabilitation Center*              *New Port Richey, Fl.*

- Managed staffing and budget for nursing in a 120 bed SNF.
- Implemented Core programs and facility protocols and systems to meet corporate standards.
- Implemented a Care Management Team approach utilizing quality indicators and a interdisciplinary approach to improve quality of care.
- Participated in two successful state surveys, with minimal sites in nursing and a desk review follow-up.

**ASSISTANT DIRECTOR OF NURSING/ INSERVICE DIRECTOR**        1996 -1999
*Richey Manor Nursing and Rehabilitation Center*              *New Port Richey, Fl*

- Planned and implemented state mandated educational programs for all employees.
- Developed the curriculum and implemented a 120-hour state approved Nursing Assistant Training Program, which allowed students to become certified in the state of Florida.
- Responsible for yearly review of the CNA Program by Florida State Board of Technical Education.
- Planned and implemented weekly education for the nursing department based on needs assessment.
- Offered CEU programs for nursing and other professional staff.
- Implemented the infection control program.
- Supervised nursing compliance programs on an ongoing basis.
- Participated in interviewing, hiring and orientation of new nursing personnel.

**LPN INSTRUCTOR I**                                          1995 -1996
*Pinellas Board of Education*                                 *Clearwater, FL*

- Coordinated class and clinical components of evening program to better integrate theory with clinical experience.
- Planned and implemented classroom curriculum.
- Sat on the curriculum committee for the program
- Supervised students in a variety of clinical settings.
- Participated in preparation and interview for SACS accreditation.

**SCHOOL NURSE/TEACHER**                                      1987 -1995
*Bridgeport Board of Education*                               *Bridgeport, Ct.*

- Coordinated health services to 1800 high school students.
- Organized and implemented screening, immunization and drug awareness programs.
- Assessed and triaged ill students
- Developed OSHA exposure control plan for Bridgeport Board of Education.
- Consulted for planning and implementation of Health Education Program offered in the Bridgeport High Schools
- Participated in Faculty education programs related to health issues in the classroom.
- Played an active role, in placement and planning for students with medical or emotional problems.

**AFTER HOURS RN/PART-TIME**                                 1993 -19995
*United Home Care*                                           *Fairfield, Ct.*

### INSERVICE EDUCATOR/SUPERVISOR
*Southport Manor*

1986 -1987
*Southport, Ct*

- Planned and implemented Nurses Aid training program leading to state certification, as well as state mandated educational programs for all employees

### SUPERVISOR OF CLINICAL SERVICES

*Kimberly Quality Care*

1985 -1986
*Bridgeport, Ct.*

- Coordinated all clinical services.
- Developed policy/procedure for in home intermittent infusion therapy.
- Supervised nursing personnel at all levels
- Performed nursing assessment on all licensed nursing cases.
- Networked with community agencies to identify need, find resources and provide services.
- Established respite home care program for clients of D.M.R.
- Assessed educational needs of aides and licensed personnel and provided education as needs were identified.

### NURSING INSTRUCTOR
*Bridgeport Hospital School of Nursing*

1974 -1985
*Bridgeport, Ct.*

- Chair of faculty development committee for 1980-1982
- Course leader for senior level Medical Surgical course. Planned and implemented class content
- Supervised clinical experience in a variety of settings. ( Oncology, Rehab unit, Neuro-surgical unit including ICU, Orthopedics)
- Member of Curriculum Committee which created a new two year program, allied with local community college.

### STAFF NURSE
*Bridgeport Hospital*                                      *Bridgeport, Ct.*
- Adult Oncology, Summer 1982
- Neuro-Surgical Unit, Summer 1977

### NURSING INSTRUCTOR
*Saint Vincent's Hospital College of Nursing*

1970 -1974
*Bridgeport, Ct.*

- Lecturer: Fundamentals of Nursing and Medical-Surgical Nursing
- Clinical supervision of students in Med-Surg units, Emergency Room, Cardiac Care Unit, Pediatrics and OB
- Curriculum and course development.
- Staff nurse
   Med-Surg, and Pediatrics

### PUBLIC HEALTH NURSE
*Norwalk Health Department*

1969 -1970
*Norwalk, Ct.*

- Performed admission assessments, and health screening.
- Supervised well baby clinics.
- Home visits for skilled care and preventative health teaching.

## EDUCATION

COURSES IN VOCATIONAL EDUCATION     1995-1996
*University of Southern Florida*     *Tampa, FL*
9 credits in Vocational Education

M.S.ED.     1987 - 1994
*Southern Connecticut State University*     *New Haven Ct.*
24 credits in MSN program 1984 -1986

CERTIFICATE IN ONCOLOGY NURSING     1980
Yale University     *New Haven, Ct.*

B.S.N.     1965 -1969
*University of Bridgeport*     *Bridgeport, Ct.*

PPS TRAINING     2001
*Harborside Health Care*     *Boston, Mass.*

## SKILLS

- RN D.C. License # RN1003127
- Classroom and clinical teaching.
- Curriculum Development
- Test Writing.
- Leadership and management skills in a LTC setting.
- Assessing, implementing and teaching long term care regulations and compliance.
- Networking and communication skills both written and verbal.
- Computer skills in MS Word, Corel, and excel

# Government of the District of Columbia
## Department of Health

**Health Care Regulation and
Licensing Administration
Board of Nursing**



February 15, 2006

Rachael Rizzo-Mitzner, BSN, MSEd, RN
Director of Nursing
Comprehensive Health Academy School of Practice Nursing
1106 Bladensburg Road, N.E.
Washington, DC 20002-2512

Dear Ms. Rizzo-Mitzner:

The Board of Nursing is considering CHA for Full-Accreditation. As part of this process the Board of Nursing and Education Licensure Commission will be scheduling a joint site visit April 17, 2006.

Please have the following available on the date of the site visit:
1. Faculty handbook
2. Student handbook
3. Minutes of meetings for the past and current year for
   a. Nursing faculty
   b. Nursing faculty committees (if applicable)
4. Course syllabi (current)
4. Program evaluation plan; (indicate changes in program as a result of program evalu
5. Up-to-date contracts with clinical facilities
6. List of advisory committee members (if established)


### SITE VISIT SCHEDULE

**MONDAY, APRIL 17, 2006**

| | |
|---|---|
| 9:00 a.m. | Meet with Nurse Administrator: Rachael Rizzo-Mitzner, BSN, MSEd, RN |
| 10:00 a.m. | Meet with full-time faculty (part-time faculty optional) |
| 11:00 a.m. | Meet with students |
| 12:00 p.m. | Tour facility |

- Library
- Classrooms
- Practice laboratory
- Computer laboratory
- Registrar's office
- General school facilities pertinent to the practical nursing program

| | |
|---|---|
| 12:30 p.m. | Review program's records |
| 1:30 p.m. | Meet with Proprietor(s) |
| 2:00 p.m. | Wrap-up meeting with Nurse Administrator |


**VISITORS:**

Rick Garcia, MS, RN, CCM, Board of Nursing Education Committee Chairperson
Education Licensure Commission Representative - TBA

Upon completion of the visit, the visitor(s) will prepare a report of the survey. The Board shall notify you and invite you to be present on the meeting date when your program is reviewed.

If you have any questions or need additional information please contact me at Karen.Skinner@dc.gov or 202.724.8818. Thank you for your cooperation.


Sincerely,



Karen V. Scipio-Skinner, MSN, RN
Executive Director
District of Columbia Board of Nursing

Site Visit Report: Comprehensive Health Academy
School of Practical Nursing
Site Visit: 17 April 2006
Donna L. Minor, MSN, RN
Nurse Educator Consultant

This report addresses areas of strengths and weaknesses identified during a re
ite visit to the Comprehensive Health Academy School of Practical Nursing (CHA).
ast site visit dated 2 and 3 August 2004 provided information based on the school's
nitial opening. This report is a follow-up to the previous visit. This visit will identify
hanges, concerns, and recommendations expressed by:

- Participants from the District of Columbia Board of Nursing (Donna Minor,
  MSN, RN-board of nursing education consultant and Rick Garcia, MS, RN,
  CCM- board of nursing education committee chairperson)

- Administrators representing CHA (Ms. Rachael, Rizzo-Mitzner-Director of
  Nursing, Mr. Michael Adedodum-Program Administrator, and Sonny Oboh-
  President/CEO)

- Two Faculty members (one nursing instructor and one M.D. serving in the
  capacity of instructor for the Anatomy and Physiology course)

- Students who are actively engaged in the current program of study

The Comprehensive Health Academy School of Practical Nursing is presently seeki
accreditation status from the D.C. Board of Nursing (the school currently has provis
status). This report will reflect specific regulatory changes, concerns, and
recommendations as governed by the D.C. board of nursing. Concerns (identified ir
and recommendations are acknowledged throughout this document.

**Meeting with the Director of Nursing: Ms. Rachael, Rizzo-Mitzner.**

Ms. Rachael, Rizzo-Mitzner, holds the Director of Nursing position.

- **The organization chart does not identify an Assistant Director of Nursing but based on the DON's job description, she delegates to the ADON (which is not a position for this organization).**
- **Who is the director of administration and general services (as reflected on the organizational chart)?**

Curriculum Philosophy, Conceptual Framework, Purpose, and Objectives
The school's curriculum does reflect the philosophy, conceptual framework, purpose, and objectives of the nursing education program. The framework (Orem's Self-Care Deficit Theory) has been  implemented into the development of each course throughout the curriculum.

Curriculum Evaluation
**No formal curriculum evaluation tool was identified**.
Recommendation: Request that they look at a 360° curriculum evaluation to include faculty and students.
**Grade scoring is in conflict with the student handbook and student transcript. On page 14 of the student handbook, a point system is identified but not on the transcript. The concern involves the points noticed in the handbook, and how those numbers are calculated into the GPA.**
Recommendation: DON stated the program would look at removing the quality point values from the handbook and not have it show up on the transcript (only a letter grade will be identified).

Curriculum Content
**In the Foundations of nursing syllabus, specific skills were identified for practice in the skill lab prior to attending clinicals. In the specialty courses (Medical/Surgical Nursing, Pediatric Nursing, Maternal, Newborn Nursing), specific skills were not identified in the syllabus. DON stated that skills were introduced and practiced at the bedside during the clinical experience.**
Recommendation: Identify specific skills for each specialty course and provide instruction and evaluation prior to attending the clinical experience (to identify competency prior to dealing with patients).

Program hours are consistent and reflect total hours of 1604 (for both didactics and clinicals).

Clinical Laboratory
Medical/Surgical clinical experiences are at acute care facilities. DON states the following acute care facilities: Greater Southeast Hospital, DC General Clinic, Premier Surgical Center of DC, Ilupeju OBGYN Clinic, CAPNA Capital Area Pediatrics.

MOUs requested for identified facilities. Site visitors did not receive these documents for review.

Recommendation: Please provide current MOUs for the following acute care facilities identified.

## Meeting with the Faculty

Two members were interviewed (one faculty member and one MD instructor). Both members stated their roles within the organization and that they did not have any concerns regarding the operations of this organization.

The DON states that faculty do not write their own examinations due to past test compromise. **The DON and program administrator, with the use of the test bank, generate all examinations**. As stated by the DON, each course syllabus is generated by this DON and reviewed with faculty, after unit commencement, for possible changes reflective of addition/deletion of days to the academic calendar.

During chart review for faculty (4 charts), **evaluations were not signed by faculty members** (only the DON's signature was present on all evaluations). Currently, there are six full- time faculty members, new to the position over the past six months. **The most experienced person on staff is the DON serving who has served as an employee for the past eight months**.

Faculty includes one with a MSN, one with ¾ MSN completion, one MSEd, one BSN, and two clinical lab personnel-one is currently working on BSN and one has the BSN degree. In addition, two MDs are classified as instructors (teaching Anatomy and Physiology, Microbiology, and Nutrition). They do not teach nursing courses.

Recommendation: Provide a continuing education action plan for full-time faculty progression for acquisition of the MSN.

## Meeting with the Students

Classroom observation
1.  Nursing in society course
Students were reviewing a handout about nursing theorists. Students appeared to be actively engaged in the discussion. **Room really cramped with students sitting too close together.**
2.  Nursing Pharmacology course
Students were reviewing material in the textbook. Class appeared bored and uncomfortable **(the room was excessively warm during the visit).**

**Students verbalized many concerns to include**:
1.  Changes in program completion based on the comprehensive examination results Students stated that students were having to stay in the program for up to 15 months based on comprehensive exam results. Students verbalized that it was

ensure that they learn about their educational deficiencies at the end of the
program instead of throughout the program. Students expressed the need for some
type of evaluation tool to measure educational performance during the midpoint
of the program instead of just at the end of the program.

2. Students stated that fees and exam are in conflict. They state that the organization
   want their money prior to taking the next exam (money is always due prior to any
   type of testing).
3. Physical facility and space not conducive to the number of students admitted.
4. Post exams are not available for review for content clarification
5. Students expressed that the school needs to improve the way exams are
   constructed. They stated that the test writer has the final authority of the test items
   instead of the person teaching the course.
6. Students feel that they do not have a voice. They stated that only one faculty
   member consistently stands up for them and values their concerns.
7. Students were not aware that they had a library. The DON stated that because
   books were disappearing, they had to move the remaining books to a controlled
   environment. She stated that students are able to review books in this new
   location.
8. Students stated that they would like to have a centralized copier/printer instead of
   having to get staff to make copies for them.
9. Students stated that the student lounge was too small for the number of students
   and that the microwave was taken away (due to fire safety) and therefore they are
   forced to eat cold meals.
10. Students stated that during the end of course evaluation, they are confused as to
    which faculty member to evaluate (some courses are taught by more than one
    person)

Students records were reviewed (four). **Tuition payment plan contracts not signed by
students or dated as to when the plan began.** Program contractual agreements are
signed when the student receive their student handbook.

Site visitors were given two statements of the comprehensive exit examination policy.
The most current policy (which was started with the February 2006 cohort) states that, "a
student may only repeat the comprehensive exam twice. A student who fails twice will be
required to repeat Medical-Surgical Nursing I and II (theory and clinical) and use the ATI
remedial program for all nursing courses before being allowed to retest. **This document
nor the previous document** (which states that students "may only repeat the
comprehensive exit exam once") **was not available in any of the student records
reviewed**.

The next graduating class will take place the 3rd week in July. The P.M. class has been
taken away from the program with the last cohort ending the P.M. phase of the program
January 2007 (N=16 students).

...ation Documentation acceptable in this role)
2. Printer missing from the computer room (9 computers are available for student use)
3. Cramped classrooms noted throughout the facility. No ventilation noted in the classrooms i.e. windows (rooms were excessively warm, with students having to sit really close to each other)
4. Skills room has five beds and three mannequins for 240 students. Sparse supplies noted for 240 students.
5. Faculty offices holds three desks per office. Faculty has access to wireless laptop computers. The only access to a printer is in the administrator's office.

## Proprietors Meeting

Present for this meeting included the DON, Program Administrator, and CEO/President.
**Other Concerns include**:
1. How do you handle pre-applicant screening?
   <u>Recommendation</u>: Formulate an admission process, which gives the organization time to interview each student (4-6 weeks instead of days prior to registering).
2. Competency progression is not currently being done at the midpoint but instead at the end of the program with is a lack of testing standardization of all students.
   <u>Recommendation</u>: Provide a study plan to include proctored exams and reassessment prior to progression to another course (mastery prior to progression to the next level). This will help those students who are in need of remediation prior to going to the next level.