UNITED STATES DISTRICT COURT FOR THE DISTRICT OF COLUMBIA

COMPREHENSIVE HEALTH ACADEMY, LLC )
d/b/a COMPREHENSIVE HEALTH ACADEMY )
SCHOOL OF PRACTICAL NURSING, ET AL. )
                                    )
    *Plaintiffs,*                   )
                                    )
    v.                              )        Civil Action No.
1:06cv01050                         )
                                    )        (RBW)
DISTRICT OF COLUMBIA, ET AL.        )
                                    )
    *Defendants*.                   )
_____)

## PLAINTIFF'S STATEMENT OF MATERIAL FACT
## AS TO WHICH THERE IS NO GENUINE ISSUE

1.    Plaintiff Comprehensive Health Academy ("Comprehensive") was granted
      preliminary accreditation as a practical nursing [education] program by
      Defendant's Board of Nursing in July 2003. Declaration of Defendant
      Karen Scipio-Skinner ("Skinner Dec '1" at paragraph 2.).

2.    Since the grant of its preliminary "license", Plaintiff Comprehensive's
      graduating have consistently maintained the highest NCLEX pass rate
      among the Practical Nursing programs in the District of Columbia.
      Declaration of Sonny Oboh ("Oboh Dec '1" at paragraph 6.).

3.    A school's pass rate is the only objective standard by which it can be
      measured (Oboh Dec '1 at paragraph 5.).

4.    Defendant's Board of Nursing compiles and publishes the pass rates of
      (students at) its licensed schools and Plaintiff is consistently number one.

5.    A requirement for accreditation under Chapter 56 of the DCMR is that a

nursing program must achieve a pass rate not more than five percent (5%) lower than the National Average and this average is set by the National Council of State Board of Nursing - commonly referred to as "NCLEX". Comprehensive's pass rate has always exceeded the National Average. (Oboh Dec '1 at paragraph 5 and 6.).

6. Comprehensive has, in its approximately three (3) years of existence, had several Americans serve as Director of Nursing and those without a degree of Masters of Nursing, were approved without personal interview (Oboh Dec '1 at paragraph 7.).

7. When Comprehensive named Michael Adedokun, a citizen of African descent, as its Director of Nursing, Comprehensive advised Defendant Board of Nursing that Mr. Adedokun held a Masters degree (from an accredited college) in Nursing and had many years experience in the administration of nursing facilities and two (2) years experience as an Administrator in Comprehensive's own school and Defendant responded by first calling him to an interview and then rendering the opinion that he was not qualified for the position (Skinner Dec '1 at paragraph 15.).

8. At least one of Defendant's "consultants", Director of Nursing Donna Minor, works for Plaintiff's competition - the University of the District of Columbia School of Nursing (Johnson Dec '1 at paragraph 3.).  Ms. Minor, herself a Defendant in this action, played a role in examining Plaintiff's performance and the subsequent refusal to grant full accreditation (Skinner Dec '1 at paragraph 19.).

9.    Faculty of the University of the District of Columbia, Plaintiff's

competitor, informed nursing students that Plaintiff's accreditation was

being denied (Oboh Dec '1 at paragraph 16.).  Both Board of Nursing

President Joyner and Board consultant Donna Minor teach at UDC and

both were engaged by Defendant in relation to review of Plaintiff's

accreditation.

10.   Nursing Student Chroma Arucha reported to Comprehensive that the UDC

Faculty had made the statement that Comprehensive's accreditation was

being denied (Oboh Dec '1 at paragraph 16.).

11.   Following Ms. Minor's statement, the enrollment at Comprehensive's

school dropped significantly and thus tuition revenue dropped

significantly (Oboh Dec '1 at paragraph 19.).

12.   Comprehensive has never been advised that it had failed to comply with

Defendant Board of Nursing's Rules for Accreditation.  On one occasion,

Plaintiff was advised to improve on several areas.  Irrespective of whether

Defendant Board of Nursing was correct in its assessment that

improvement was necessary, Comprehensive constructively responded

either by showing that it was already in compliance or by doing what the

Board of Nursing asked.  Following this "compliance effort", Defendant

Board of Nursing continuously applauded Plaintiff and as recently as

August 7, 2006 sent Plaintiff a letter so stating!  In addition, Defendant

Board of Nursing never initiated procedures in the DCMR to revoke

Plaintiff's "provisional accreditation" and as chief officer of

Comprehensive, I therefore continued our operations on the assumption

that we were in full <u>compliance</u> (Oboh Dec '1 at paragraph 21.).

Respectfully submitted,

_____

David E. Fox, Esq. - DC Bar No. 165258
1325 18th Street, NW
Suite 103
Washington, DC  20036
(202) 955-5300
*Attorney for Plaintiffs*

**UNITED STATES DISTRICT COURT FOR THE DISTRICT OF COLUMBIA**

_____
**COMPREHENSIVE HEALTH ACADEMY, LLC** )
**d/b/a COMPREHENSIVE HEALTH ACADEMY** )
**SCHOOL OF PRACTICAL NURSING, ET AL.** )
                                    )
      *Plaintiffs,*                 )
                                    )
      **v.**                        )          **Civil Action No.**
**1:06cv01050**
                                    )          **(RBW)**
**DISTRICT OF COLUMBIA, ET AL.**    )
                                    )
      *Defendants*.                 )
_____ )

**DECLARATION OF SONNY OBOH IN OPPOSITION TO**
**DEFENDANT'S MOTION TO DISMISS/SUMMARY JUDGMENT**

I, Sonny Oboh, under penalties of perjury hereby declare:

1.    I am the President/CEO of Comprehensive Health Academy

      ("Comprehensive") a school of practical nursing.

2.    That I am familiar with the operations of Comprehensive, its applications

      to and relations with the District of Columbia Board of Nursing and most

of its Board Members, employees and contractors.

3.    That I have participated in or been supervisor of Comprehensive's relationship with the Board of Nursing, its applications for accreditation, the Board of Nursing's responses and Comprehensive's efforts to comply with the Board of Nursing's requests.

4.    That in July 2003 Comprehensive was granted provisional accreditation as a practical nursing (educational) program.

5.    That Comprehensive was told by Defendant Board of Nursing that the full accreditation decision was based on the "pass rate" of our graduates under the National Council of State Board of Nursing "NCLEX -PN Reports" as well as our compliance with District of Columbia law and regulation. Indeed, the NCLEX pass rate is the only <u>objective</u> measure of a school's performance.

6.    That <u>every</u> graduating class of Comprehensive had the highest or next to highest "pass rate" of any Practical Nurse (PN) school of nursing in the District of Columbia.  That as of August 2006, we had <u>the</u> <u>highest</u> pass rate year to date of all PN schools.  Moreover, we were not told of any failure that would harm our status.  We undertook no major program changes.

7.    That due to well known national shortages of nurses and nurse administrators, Comprehensive had some difficulty hiring and retaining a nurse administrator for our program.  We hired nurse administrators who were predominantly American <u>by birth, some who had a MS degree in</u>

nursing, and one (1) who did not have that degree and the Board of
Nursing accepted them all. Moreover, the Board of Nursing to my
knowledge never asked to interview any of them.

8.    That in early 2005 Comprehensive was indeed looking to hire a nurse
administrator but during that time prior to the hiring of a nurse
administrator Comprehensive did have an employee performing those
tasks. That employee, Michael Adedokun, was a registered nurse and a
person with more than fifteen (15) years experience as a nursing home
administrator and he was then almost finished with his course work
(including course work dealing with the education of nurses) in pursuit of
a Masters degree in Nursing. I wrote to the Board of Nursing in May 2005
that Mr. Adedokun had been appointed to the position of Director of
Nursing.

9.    Rather than accept Mr. Adedokun for the position the Board of Nursing
demanded an interview with him. This surprised me because the Board
had never requested or demanded an interview with our prior Nurse
Administrators except the first who was not born in America.

10.   I attended Mr. Adedokun's interview and found it troubling. The Board
showed disrespect and I could not help but associate with their conduct
prior Board comments about "Africans", nor could I help but contrast this
"interview" with the fact that our prior American born nurse
administrators were not "interviewed".

11.   Although I have read Karen Scipio-Skinner's Declaration listing three (3)

types of experiences, Mr. Adedokun allegedly lacked I do not remember and do not believe those three (3) areas were explored in even minimal detail at the "interview". Moreover, Mr. Adedokun had experience in curriculum development and had worked as a facility administrator (which is perhaps of equal or greater import than working as a school administrator). Indeed, the fact that Michael Adedokun was greatly responsible for our school's pass rate - the best in Washington, DC - and the Board paid no attention to that fact upset me.

12. Because the Board of Nursing rejected Mr. Adedokun as Nurse Administrator we had no choice but to find another person to fill that position. This time the Board of Nursing asked to interview (her) (Ms. Rizzo), a white American.

13. After Ms. Rizzo's interview. The Board of Nursing took no action but scheduled a "site visit" for six (6) months later. Thus, the Board of Nursing knowingly left in place a nurse administrator who it neither accepted nor rejected and knowingly left that position nominee unevaluated for more than six (6) months.

14. On May 3, 2006, the Board of Nursing rejected Comprehensive's application for full accreditation citing four (4) factors that primarily indicated that the Board lacked data and that the Board wanted evidence of "clinical competency" and more data on Comprehensive's test design and evaluation. Most of these items were not discussed previously and were barely discussed at the April 17, 2006 site visit. This data was available

on the school though the Board did not specifically ask for it.

15. The individual who conducted the site visit, Donna Minor is an instructor at a school run by a competitor (the University of the District of Columbia, School of Nursing). I found the obvious conflict of interest to be disturbing but I permitted her to visit our school.

16. UDC Faculty told its students including Ms. Anucha that Comprehensive was losing its accreditation. UDC is a competitor of Comprehensive.

17. Ms. Scipio-Skinner's Declaration (paragraph 22) states that the failure to grant Comprehensive full accreditation was based on program deficiencies and failure to comply with regulations. In point of fact, the alleged "deficiencies" were mostly their lack of information (we quickly provided that information) and if there was a failure to comply with regulations the Board of Nursing clearly failed to articulate which regulations were not followed - nor did they provide the reply/appeal mechanism set forth in the DCMR. Thus, I could only conclude after the site visit that there were no regulatory failures. In addition, I reiterate that Comprehensive responded to all four (4) of the alleged factors that led to denial of accreditation and still full accreditation was not granted (the factors are set forth in Ms. Scipio-Skinner's Declaration at paragraph 20).

18. As I read Ms. Scipio-Skinner's Declaration I see at paragraph 22 that she states that the Board of Nursing denied full accreditation but she did not send us any notice of procedures to undertake to challenge or appeal from that decision.

19. As I read Ms. Scipio-Skinner's comments, I see throughout her opinion a statement that Mr. Adedokun did not qualify for the Nurse Administrator job, I believe it should be made clear that many of our competitor's programs are headed by nurse administrators with far lesser qualifications than those of Mr. Adedokun. Since the criteria for the position are not clear it is my view that the only reason for his rejection is his national origin.

20. I never received notice of appeal or other procedures we could take to improve after full accreditation was denied but I did receive a letter (August 7, 2006) from the Board of Nursing stating that Comprehensive was a program in compliance with its rules!

21. I have noted the Defendant's statement in paragraph 26 of Ms. Skinner's declaration that licensure is controlled by the District's Educational Licensing Commission. As phrased, Ms. Skinners' statement is difficult to understand. Comprehensive does hold a license from the Licensing Commission so we can teach those interested in nursing; however, unless we are accredited by the Board of Nursing our students would not be permitted to take the nursing exam. Thus, the Board of Nursing has great control over our success or failure.

22. After Defendant failed to grant full accreditation to Comprehensive our enrollment and thus our income declined by a substantial factor.

23. When other schools were in non-compliance with Board of Nursing

regulation (Ex. - J.C., Inc.), the Board offered them an opportunity to

remedy.


**INTENTIONALLY LEFT BLANK**

I DECLARE UNDER PENALTY OF PERJURY THAT THE FOREGOING IS TRUE AND CORRECT.


_____
SONNY OBOH


Signed on August _____, 2006

## UNITED STATES DISTRICT COURT FOR THE DISTRICT OF COLUMBIA

_____
COMPREHENSIVE HEALTH ACADEMY, LLC )
d/b/a COMPREHENSIVE HEALTH ACADEMY )
SCHOOL OF PRACTICAL NURSING, ET AL. )
                                                                     )
            *Plaintiffs,*                                         )
                                                                     )
            v.                                                      )        **Civil Action No.**
1:06cv01050                                                    )
                                                                     )        **(RBW)**
DISTRICT OF COLUMBIA, ET AL.                   )
                                                                     )
            *Defendants*.                                       )
_____ )

### DECLARATION OF MICHAEL ADEDOKUN IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS/SUMMARY JUDGMENT

I, Michael Adedokun, under penalties of perjury hereby declare:

1.         I am an owner and an officer (Vice President) of Comprehensive Health Academy ("Comprehensive") and Program Administrator of Comprehensive and I have been involved with Comprehensive in a full time capacity since 2003.  Comprehensive is owned by individuals of African descent.

2.     That I hold several educational certifications/degrees from accredited

institutions including:

- Masters in Nursing, Bachelors in Nursing
- Registered Nurse
- Licensed Practical Nurse
-
3.     That my work experience includes two (2) years as Program Administrator

of Comprehensive, four (4) years as Director of Nursing at Beverly Health

Care, five (5) years as an Infusion/Home Health Care nurse for the

Visiting Nurse Association, five (5) years as Assistant Director of Nursing

and Evening Supervisor at Beverly Health Care.

4.     That my work experience includes:

- Creating educational programs for nurses
- Monitoring nurses development
- Supervising nurses quality of care
- Supervising compliance with State nursing requirements
-
5.     That I hold licenses as

- Licensed Nursing Home Administrator
- Registered Nurse (DC and Maryland)
- Infusion Nurse
- American Heart Association - Life Support
- American Nurses Credentialing Center (Gerontology)
-
6.     That I am currently completing my education to obtain a Doctor of

Philosophy degree in education (expected in December 2007).

7.     That incident to my work at Comprehensive, I was named to be Nurse

Administrator.  That I was surprised to be called to an interview by the

Board of Nursing because the prior two (2) persons at Comprehensive

who had held that job were not called to an interview but were accepted by

the Board of Nursing (i.e., Dr. Green, Ms. Legham).

8.    That prior to my completion of the Master of Science degree in Nursing, Karen Scipio-Skinner, the Board of Nursing's Chief Operating Officer had told me that the degree would qualify me to serve as Nurse Administrator of Comprehensive.  That although this requirement was not applied to others (e.g., the Nurse Administrator at our competition, the Harrison Career Center, did not hold an MSN degree) in nursing at the time.

9.    That as an experienced executive with more than fifteen (15) years of clinical and administrative experience, I believed I would qualify yet at the "interview" I was subjected to a humiliating "attack" by Defendants.

10.   I felt the Board of Nursing was using against Comprehensive the fact that there is an area-wide shortage of Nurse Administrators.  Further, Defendant Ms. Scipio-Skinner has called our applicants for that position to try to dissuade them from accepting employment with Comprehensive. Clearly, Ms. Skinner was harming Comprehensive.

11.   Ms. Scipio-Skinner did say that I lacked two (2) years of post-graduate experience.  The complaint/criticism struck me as hollow as I had fifteen (15) years of practical experience and was at that time an administrator of Comprehensive's program for some two (2) years.  In many ways as I felt my fifteen (15) years experience more than made up for the fact that my MSN was obtained only in May 2005.  Ms. Scipio-Skinner's inability to grant me approval for that position based on "comparable work experience" plus prior Board of Nursing comments about "Africans" caused me concern.

I also thought my situation was comparable to others who had been approved by the Board of Nursing. One example was our competitor, the A&D Nursing Institute where the Board of Nursing approved Ms. Hurd as Nurse Administrator even though she lacked a Masters degree in Nursing. Ms. Hurd did have a Masters of Science in Management which I thought was comparable to my years in nurse-management (plus I had completed my MSN in nursing) ("MSN").

12.   Ms. Skinner's declaration now contains references to the qualifications for the nurse administrator position as including "knowledge of understanding of curriculum development, integrating theory into practice, program evaluation and other essential skills…" I do not see how Ms. Skinner can maintain that Ms. Green and Ms. Legham - prior nurse administrators had those skills when her agency did not interview them and conversely how she could say I lacked those skills. Did she really believe that after fifteen (15) years in nursing and with years of supervising and training nurses and two (2) years at Comprehensive, I did not understand "integrating theory into practice? Or that I did not understand program evaluation? I could only conclude that my interview was a sham and that I was prejudged because of my African origin.

**DECLARATION OF WILLIAM JOHNSON**

1.     I, William Johnson, state under penalty of perjury that I work as a process server under my business name of Heaven Sent Services.

2.     That I was engaged by attorney David E. Fox to serve the Defendants in the case of Comprehensive Health Academy v. District of Columbia, Civil Action No. 1:06cv01050.

3.     That I served the mayor's office, Ms. Scipio Skinner and Ms. Joyner. While at Ms. Joyner's office at the University of the District of Columbia ("UDC"), I was also looking to serve Ms. Donna Minor and I took notice of the fact that she shared an office with Defendant Joyner.

4.     I was told that Ms. Minor would not return to her office at UDC until school resumed about Labor Day.

Stated under penalties of perjury.


Dated: _____


_____

WILLIAM JOHNSON