UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA
_____

**COMPREHENSIVE HEALTH ACADEMY, LLC,**
**d/b/a COMPREHENSIVE HEALTH ACADEMY**
**SCHOOL OF PRACTICAL NURSING,** *et al.*

      Plaintiffs,

    v.                                              Civil Action No. 1:06cv01050
                                                                            (RBW)

**DISTRICT OF COLUMBIA,** *et al.*

      Defendants.
_____

**DEFENDANTS' REPLY MEMORANDUM IN SUPPORT OF MOTION**
**TO DISMISS OR, IN THE ALTERNATIVE, FOR SUMMARY JUDGMENT**

**I. PRELIMINARY STATEMENT**

Plaintiffs' Opposition To Defendants' Motion To Dismiss Or, In The Alternative, For Summary Judgment ("Plts' Opp.") is remarkable for what it does ***not*** address or refute.

First, Plts' Opp. does not at all address or refute Defendants' position that the DC Department of Health, Professional Licensing Administration and the DC Board of Nursing (hereafter the "BON" or "the Board") are *non-sui juris*.[1] Thus, the claims against these Defendants should be dismissed.

Second, Plts' Opp. also does not at all address or refute Defendants' position that

---

[1] *See Defendants' Memorandum of Points and Authorities In Support of Defendants' Motion* ("Defs' Mem.") at 11-12.

Defendants Skinner and Joyner are shielded from liability by qualified immunity.[2] Thus, the claims against Defendants Skinner and Joyner also should be dismissed.

Third, Plts' Opp. provides absolutely no legal support for Plaintiffs' so called "claims." Plaintiffs wholly fail to challenge Defendants' demonstration that the claims asserted are not supported by any statutes or law. Plaintiffs also fail to refute the decisional law relied upon by Defendants which unequivocally demonstrates that Plaintiffs' claims fail as a matter of law.[3]

Fourth, Plaintiff CHA (also referred to as "Comprehensive") does not refute Defendants' demonstration that its claims are not ripe because it has not yet exhausted its administrative remedies. Rather, Plaintiff Comprehensive appears to assert that because it had not yet received a letter from the BON denying it accreditation, it may invoke the jurisdiction of this Court. Plaintiffs' position, if accepted by this Court, would turn the doctrine of exhaustion of administrative remedies as a prerequisite to filing suit in this Court on its head. Any plaintiff that suggests that it is being injured based on potential agency action would be able to bring suit preemptively in this Court even if, as here, an administrative process exists to address plaintiff's claims once there has been a final

---

[2] *Defs' Mem.* at 22-27. Plaintiffs, although represented by counsel, do not evidence even a basic understanding of the applicable legal doctrine of qualified immunity from suit, arguing that the acts of Defendants Skinner and Joyner are *ultra vires* and, thus, that they are *non-sui juris*. *See Plts' Opp.* at 10 (The pages of Plts' Opp. were not numbered so the references herein are to page numbers from the Court's electronic copy). Not only are there no facts asserted in the complaint to support a contention that the purported unspecified acts of Joyner and Skinner are *ultra vires*, but Defendant never argued that these named defendants were *non-sui juris*, whatever that concept may mean in the context of these individuals. Rather, Defendants demonstrated that Defendants Skinner and Joyner were shielded from liability by qualified immunity, a position not refuted at all by Plaintiffs.

[3] For example, with respect to Plaintiff Adedokun, Plaintiffs wholly fail to address or refute the discussion at pages 18-22 of *Defs' Mem.* that Adedokun's allegations do not give rise to cognizable claims for which relief can be granted and/or that Defendants are entitled to judgment on such claims as a matter of law.

agency action.[4]

Moreover, Plaintiff Comprehensive's position is especially untenable as of the time of the filing of this reply memorandum. On September 18, 2006, a Notice of Intent to Deny Full Accreditation was served on Plaintiff Comprehensive, thus triggering the administrative process.[5] Thus, Plaintiff Comprehensive has immediate recourse to an administrative process, including a hearing, which will fully protect any asserted due process rights.

In an effort to survive dismissal of their claims or summary judgment in favor of Defendants, Plaintiffs engage in a purposeful gloss and misrepresentation of statements in Defendants' moving papers which, upon careful review, are not refuted and support Defendants' motion.[6] Defendants have more than adequately demonstrated that Plaintiffs have failed to state claims for which relief can be granted or that Defendants are entitled to judgment as a matter of law.[7] The additional issues raised by Plts' Mem. are addressed below seriatim.

---

[4] Plaintiffs cannot, as they suggest, bypass the administrative process simply because there may be a decline in enrollment once it is known that CHA's accreditation may be withdrawn or full accreditation denied. In fact, the applicable regulations require that once the Board determines not to grant full accreditation, Comprehensive is entitled to a hearing and to present evidence to challenged the Board's actions. *See NOI* attached to *Second Declaration of Karen Scipio-Skinner* ("Second Skinner Decl.) attached hereto.

[5] *See Second Skinner Decl.* at ¶2 and NOI attached thereto.

[6] In fact ***none*** of the statements in Defendants' Statement of Material Facts As To Which There Is No Genuine Dispute ("Defs' Statement"), filed in support of their Motion, are refuted.

[7] Plaintiffs submitted a "Statement of Material Fact As To Which There Is *No* Genuine Dispute" ("Plts' Statement"). Defendants do not quite understand the purpose of this Statement since it obviously does not satisfy Plaintiffs' burden in opposing Defendants' alternative motion for summary judgment. Indeed, Plaintiffs do not appear to contest Defendants' Statement. And, except for the conclusory, unsubstantiated, and speculative assertions made in Plaintiffs' Statement, the *material facts* are not disputed. Moreover, as will be discussed herein, the unexecuted Declarations of Sonny Oboh ("Oboh Decl.") and Michael Adedokun ("Adedokun Decl.") suffer from the same defects and, thus, also are inadequate to satisfy Plaintiffs' burden on Defendants' Motion.

## II. ARGUMENT

*A. There Are No Substantiated Genuine Issues Of Material Fact.*

1. <u>Plaintiff Comprehensive</u>

Without any support, and in blatant disregard of the substantiated statements in the Declaration of Karen Scipio-Skinner ("*First Skinner Decl.*"), filed in support of Defendants' Motion ("Exhibit B" thereto),[8] Plaintiffs baldly assert that "[t]he major criteria for full accreditation is, and has been since 2003, the school's students' "pass rate" on the Nursing Board exam."[9] This is demonstrably and undisputedly not true. Although Defendants do not dispute that Plaintiff Comprehensive's "year to date pass rate is the highest of all practical nursing schools,"[10] as Ms. Skinner explained, and as the relevant provisions of 17 DCMR §5600 provide, the NCLEX-PN pass rates is not the only regulatory requirement considered by the Board when making accreditation decisions.[11] Moreover, section 5603.2(c) and 5603.7(a) make clear that in order to receive and maintain full accreditation status, a program must demonstrate and maintain a continued ability to meet the standards and requirements of this chapter (Chapter 56), only one of which is the NCLEX-PN pass rate.[12] The unchallenged statements of Defendant Skinner and Defendant Joyner, supported by contemporaneous documentation, unequivocally demonstrate that the BON identified numerous objective deficiencies in

---

[8] Unlike some of the conclusory, speculative, misleading, and unsubstantiated assertions made by Oboh and Adedokun in their Declarations, the statements in Ms. Skinner's first Declaration were supported by citations to the relevant sections of the DCMR governing the operations of a practical nursing school, as well as documents evidencing Comprehensive's non-compliance.

[9] *Plts' Opp*. at 3-4.

[10] *Plts' Opp.* at 4 and Plts' Statement ¶2. The BON, however, does not rank nursing programs. *Second Skinner Decl.* at ¶4. Thus, the representation in *Plts' Statement* (¶4) that "Defendant's Board of Nursing compiles and publishes the pass rates of (students at) its licensed schools and Plaintiff is consistently number one," is somewhat misleading.

[11] *See First Skinner Decl.* at ¶¶13, 27 and *Second Skinner Decl.* at ¶3.

[12] *Second Skinner Decl.* at ¶3.

Plaintiff Comprehensive's program and, thus, made the determination that it was not in compliance with the provisions of Chapter 56, 17 DCMR 5600.[13]

The above discussion also demonstrates that the unsupported conclusory statement that "Plaintiff Comprehensive has not failed any requirement of D.C. licensing authorities"[14] is untrue. Equally disingenuous is Plaintiffs' representation that it learned its accreditation was denied because of representations made by University of the District of Columbia ("UDC") School of Nursing faculty to students.[15] Not only is the "faculty" who made this purported representation unidentified, but Defendants Skinner and Joyner explicitly have disavowed making any such statements[16] and there is no evidence to refute such representations.[17]

Defendants agree that at the time of the filing of the instant complaint, Plaintiff Comprehensive had not yet received a NOI which would trigger the administrative process.[18] As of this date, however, it has received such Notice and an administrative process exists pursuant to which Comprehensive can challenge the Board's action and fully present its claims.[19] Moreover, what Plaintiff Comprehensive fails to tell the Court is that because no final agency action yet has been taken, it continues to operate under its initial accreditation and will continue to do so if the Board's decision is challenged until

---

[13] *See Defs' Mem.* at 6; *First Skinner Decl.* at ¶20; *Second Skinner Decl.* at ¶¶5, 8; *Defs' Statement* at ¶12-13; *Joyner Decl.* (Exhibit C to Motion) at ¶¶ 3-4.

[14] *Plts' Opp*. at 4. Defendants are not quite sure what Plaintiff means by use of the term "failed," but the unchallenged contemporaneous record is clear that because of the documented deficiencies in Plaintiff Comprehensive's program, the BON determined that Comprehensive was not in compliance with the provisions of Chapter 56. *See* n. 13. *See also Second Skinner Decl.* at ¶5.

[15] *See Plts' Opp*. at 4.

[16] *See Joyner Decl.* at ¶2 and *First Skinner Decl.* at ¶29.

[17] Plaintiffs' allegations in this respect are craftily "couched," but are nothing more than unsubstantiated and unattributed assertions, alluding generally to unidentified UDC faculty. As such, they are entitled to no consideration by this Court. *See Plts' Opp.* at 5. Plaintiffs do not, because they cannot, accuse either Defendants Joyner or Skinner of making statements to UDC nursing students concerning Plaintiff Comprehensive's accreditation.

[18] *See Plts' Opp*. at 4.

[19] *See Def's Mem*. at 16-18; Second Skinner Decl. at ¶2.

there is a final decision.[20] And, Plaintiff Comprehensive's fabricated allegations that it has not been offered the same opportunities to correct deficiencies in its nursing program because it is "'owned and operated' by individual of African descent"[21] not only is a transparent effort to create a constitutional claim where none exists, but is wholly contrary to the undisputed actions of the BON.

The *First Skinner Decl.* and the documents attached thereto demonstrate that the Board repeatedly has communicated with Plaintiff Comprehensive concerning deficiencies in its program and has told it specifically what actions it needed to take to comply with applicable regulations.[22] As the undisputed facts outlined by Defendant Skinner demonstrate, if the Board's intent were to "discriminate" against Plaintiffs, it had numerous opportunities to withdraw Plaintiff Comprehensive's initial accreditation.[23]

2. Plaintiff Michael Adedokun

Plaintiffs appear to suggest that because Plaintiff Adedokun is of African descent and was interviewed by the Board when he was to serve as Plaintiff Comprehensive's

---

[20] See 17 DCMR §5606.6(a)(2).
[21] *See Plts' Opp.* at 4.
[22] *See, e.g., First Skinner Decl.* at ¶¶5, 8, 9, 10, 12-23, 16, 20, and 28; *Second Skinner Decl.* at ¶¶ 5, 8.
[23] Plaintiffs' argument that the UDC Nursing School is a competitor of Plaintiff Comprehensive and, thus, there is some type of "conflict of interest" because Defendants Joyner and Minor are members of the UDC faculty is patently wrong. *See Plts' Mem.* at 5. First, if this position were accepted, the Board could not review or take action with respect to any nursing programs in the District, because it would be deemed a "competitor" of all such programs. In fact, DC has six LPN Schools accredited by the Board and "competition" is not an issue for UDC. *See Second Skinner Decl.* at ¶6. Second, Defendant Joyner categorically states that she is a faculty member in the Registered Nurse (RN) program at UDC and has never taught in or had any association with the LPN Program, nor has she ever advised students as to LPN programs generally or advised students specifically with respect to Plaintiff Comprehensive's program. Most importantly, Dr. Joyner *did not vote* on matters concerning Plaintiff Comprehensive's accreditation. *See Joyner Decl.* at ¶5 and *First Skinner Decl.* at ¶24. Although she is not a party to Defendants' motion because she has not been served, the same is true as to Defendant Minor. Defendant Minor is a faculty member of UDC's RN program, not its LPN program. (*See Second Skinner Decl.* at ¶7). And, again, most importantly, Defendant Minor does not vote on matters pertaining to nursing schools. *See First Skinner Decl.* at ¶24. Also, Plaintiffs' representation that Defendant Minor, is a "Director of Nursing" at UDC (*Plts' Statement* at 7) simply is wrong. *Id.*

Qualified Nurse Administrator ("QNA"),[24] he has some free-floating form of a constitutional claim. First, as demonstrated in *Defs' Mem.*, Adedokun has not stated any cognizable claim which would entitle him to relief. As demonstrated, the statutes and laws relied upon by Adedokun in the Complaint provide no legal basis for his claims and refute any suggestion that Defendants violated any recognized constitutional rights in interviewing him and then determining that, pursuant to the regulations, he did not have the necessary skills and was not qualified to manage Comprehensive's nursing program.[25]

Plaintiffs offer nothing in response -- they do not dispute the case law relied upon by Defendants to demonstrate that Adedokun has not and cannot state a claim under the facts alleged and they offer no legal support whatsoever for their continuing claim that he was discriminated against because the Board found that he did not have the necessary qualifications to be Plaintiff Comprehensive's QNA.

Moreover, Plaintiffs again mislead this Court when they suggest that Adedokun only was interviewed and found lacking in qualification by the Board because he is of African descent.[26] First, it is well documented that Adedokun, notwithstanding a Master's degree, lacked the essential skills necessary for a QNA of a newly established practical nursing program.[27] Second, the Board's interview of Adedokun was pursuant to its normal practice[28] and, contrary to Plaintiffs' conflicting representations,[29] the Board

---

[24] "QNA" is a term of art since it is defined in the regulations. 17 DCMR §5607
[25] *See Defs' Mem.* at 18-22.
[26] *Plts' Opp.* at 6 and *Plts' Statement* at 6-7.
[27] *See First Skinner Decl. at ¶¶14-15.* It also is documented that when Oboh and Adedokun earlier met with the Board to obtain initial accreditation, several persons were presented with masters degrees and considerable clinical experience that also were found to be unsuitable as program administrators because they did not have experience administering an educational program and lacked knowledge in curriculum development. *Id.* at ¶15. Thus, Adedokun hardly can complain that he is being treated differently than other candidates.
[28] *See Second Skinner Decl.* at ¶8.

7

did interview Ms. Rizzo, Comprehensive's present QNA.[30] If anything, the undisputed facts, as supported by contemporaneous documents, demonstrate that in the short time it has been in business, Comprehensive has experienced great difficulty hiring and retaining a qualified QNA and that it has not been candid or forthcoming with the Board concerning such issues.[31] Indeed, it is only through the Board's largess, now exhausted, and its commitment to working with a newly established program, that CHA has been able to maintain its initial accreditation for so long.

3.  There Are No Errors in Defendants' Factual Statement

The only purported error that Plaintiffs point to in Defendants' factual statement is the representation that Dr. Joyner has no association with the LPN Program at UDC.[32] Plaintiffs make the frivolous assertion that this statement is erroneous because Dr. Joyner shares an office at the UDC School of Nursing with Defendant Minor.[33] Neither Dr. Joyner nor Ms. Minor ever denied that she was on the faculty of UDC. The undisputed fact, however, is that neither is on the faculty of the UDC LPN program, the program Plaintiffs accuse of somehow being "in competition" with CHA. Obviously, Plaintiffs either have some difficulty comprehending the difference between the UDC LPN and RN programs or they purposefully are obfuscating the issue.

---

[29] Mr. Oboh admits that the Board interviewed Ms. Rizzo (Oboh Decl. at ¶13) contrary to the representations in *Plts' Opp.* at 6 and *Plts' Statement* at 6.

[30] *See Second Skinner Decl.* at ¶9.

[31] *Id.* In fact, the report of the August 2004 CHA site visit, which was not conducted by Defendant Minor, but by a different Nursing Education Consultant, found that there was no QNA and that Adedokun, as Program Administrator, was not able to adequately present the program. The consultant at that time found Adedokun not qualified and, importantly, that he was not able to adequately explain curriculum concepts, an essential qualification of a nurse administrator pursuant to the regulations (17 DCMR §5607.3(c)). *See Second Skinner Decl.* at ¶9.

[32] *Plts' Opp.* at 6-7

[33] The representation that Dr. Joyner and Ms. Minor studied Plaintiff CHA's qualifications "in consort," is the type of conclusory, speculative, and unsubstantiated hyperbole that pervades Plaintiffs' papers.

### B. Plaintiffs Fail To Support Any Claims For Which Relief Can Be Granted And, Alternatively, Have Failed To Carry Their Burden To Defeat Summary Judgment

Plaintiffs' so-called argument in opposition to dismissal or, alternatively, the entry of summary judgment in favor of Defendants, is a hodge-podge of unsubstantiated allegations and fabricated legal theories.[34] Moreover, the Oboh and Adedokun Decls. do nothing to satisfy Plaintiffs' burden on Defendants' Motion. Decisional law is well settled that conclusory allegations, speculation, and unsubstantiated assertions are inadequate to satisfy the non-movant's burden. Rather, the non-movant must set forth specific facts that support his case. *Huckabay v. Moore*, 142 F.3d 233, 240, n.5 (5th Cir. 1998), *citing Douglass v. United States Auto Ass'n*, 79 F.3d 1415, 1419 (5th Cir. 1996)(en banc).[35]

For example, there are no facts alleged to support a claim of some type of "conspiracy,"[36] giving rise to a legally cognizable claim. Plaintiffs cite no law which would support a claim entitling them to relief under the facts presented here. Plaintiffs should not be permitted to "hail" Defendants into court on some fabricated legal theory, unsupported by anything other than speculation and conjecture, and then use the judicial process and discovery in an effort to "find" a claim. Indeed, this situation is exactly what the doctrine of qualified immunity from suit was designed to prevent.[37]

---

[34] Many of Plaintiffs' misrepresentations are repeated in the "Argument" section of its *Opp. Mem.* at 10-15. Defendants already have addressed these in the preceding section of this reply memorandum and will not repeat them here. Other misstatements and misrepresentations are addressed in the *Second Skinner Decl.*
[35] *See also Greene v. Dalton*, 164 F.3d 671, 675 (D.C. 1999), a case cited by Plaintiffs ["Although as a rule, statements made by the party opposing a motion for summary judgment must be accepted as true for purposes of ruling on that motion, some statements are so conclusory as to come within an exception to that rule."](citations omitted); *Lefkowitz v. Citi-Equity Group, Inc.*, 146 F.3d 609, 611 (8th Cir. 1998) ["conclusory affidavits insufficient basis to deny summary judgment," *citing Armour & Co. v. Inver Grove Heights*, 2 F.3d 276, 279 (8th Cir, 1993)].
[36] *Plts' Opp.* at 10.
[37] *See Defs' Mem.* at 22-27.

As for Plaintiffs' so-called "conflict of interest" claim,[38] Defendants already have demonstrated that there is no factual basis for this claim and that it is based solely on unsubstantiated conjecture by Plaintiffs.[39] Plaintiffs' concocted "conflict of interest" theory based on the fact that Defendant Minor teaches at UDC (but not in the LPN program) is a red herring and does not give rise to any cognizable legal theory.[40] Plaintiffs' mere invocation of "conflict" without any substantive basis whatsoever does not give rise to a justiciable claim upon which relief can be granted.

Plaintiffs' position that it somehow may preempt the administrative process because knowledge of the Board's intended action allegedly caused its enrollment to drop[41] also is without basis. First, as Defendant Skinner has certified, the Board has not left CHA in "certification limbo."[42] The Board timely requested the OAG to draft a NOI and, as of this filing, a Notice has been served on Plaintiff Comprehensive. Plaintiffs cannot "skip" the administrative process simply because the public may know that its program is under review.

Finally Adedokun's so called claims have been fully addressed in Defs' Mem. Not only are the points raised in response nonsensical, but Plaintiffs have not disputed Defendants' demonstration that Adedokun's claims fail as a matter of law. Moreover, Plaintiffs have provided absolutely no legal support for such claims.

---

[38] *See Plts' Opp.* at 10.

[39] Plaintiffs apparently are attempting to use the arguments raised in their Opp. Mem. to amend their complaint. *See Plts' Mem.* at 10. Defendants are unaware of any Federal Rule of Civil Procedure which permits Plaintiffs to attempt to amend their pleadings in this manner. In any event, even this impermissible attempt to state a claim fails for the exact same reasons discussed in *Defs' Mem.*

[40] The Court should carefully note that the UDC "faculty" who allegedly "publicly stated to UDC nursing students that Comprehensive was going to lose its accreditation" is unidentified. Also, Defendant Joyner specifically has denied making any such statements to UDC students and Plaintiffs' speculative accusation that she did (*Plts. Mem.* at 11) should not be credited by this Court.

[41] *Plts' Opp.* at 12.

[42] *Id.* at 11.

### III. CONCLUSION

Nothing in Plts' Opp. cures the fatal deficiencies of the claims attempted to be alleged here. Plaintiff's Adedokun's concocted claim of discrimination not only is without factual basis, but it also is not supported by any cognizable legal theories. Unfortunately, because he disagrees with the Board's decision concerning his qualifications to be the QNA of a newly established nursing program, Adedokun has elected to blame his national original and/or race in a transparent attempt to concoct a federal claim. This Court should not sanction such conduct by allowing such a meritless claim to go forward.

The same is true as to Plaintiff Comprehensive. In fact, Plaintiff Comprehensive's dispute with the Board concerning its accreditation is just that – a dispute with the Board. This dispute first must be addressed in the administrative process before any appeal to the court of proper jurisdiction, which is the D.C. Court of Appeals. As demonstrated in *Defs.' Mem.*, Comprehensive's dispute with the Board is essentially a local claim which predominates and preempts Plaintiffs' attempt to fabricate a constitutional claim. Plaintiffs' contorted efforts to create such, where none exists, simply to invoke the jurisdiction of this Court, also should not be sanctioned.

For all the foregoing reasons, as well as those discussed in *Defs' Mem.* and the supporting Decls. of Ms. Skinner and Dr. Joyner, the complaint should be dismissed or, in the alternative, summary judgment should be entered in favor of Defendants.

           Respectfully submitted,

           ROBERT J. SPAGNOLETTI
           Attorney General, D.C.

           GEORGE C. VALENTINE

        Deputy Attorney General, D.C.
        Civil Litigation Division


            /s/ Richard S. Love
        RICHARD S. LOVE, D.C. Bar No. 340455
        Chief, Equity I
        441 Fourth Street, N.W., 6th Floor South
        Washington, D.C. 20001
        Telephone: (202) 724-6635
        Facsimile: (202) 727-0431


            /s/ Ellen A. Efros
        ELLEN A. EFROS, D.C. Bar No. 250746
        Assistant Attorney General
        Equity 1
        441 Fourth Street, N.W., 6th Floor South
        Washington, D.C. 20001
        Telephone: (202) 442-9886
        Facsimile: (202) 727-0431
        ellen.efros@dc.gov