UNITED STATES DISTRICT COURT FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| COMPREHENSIVE HEALTH ACADEMY, ET AL ) | |
| ) | |
| *Plaintiffs,* ) | |
| ) | |
| v. ) | CA No. 1:06cv01050 |
| ) | (RBW) |
| DISTRICT OF COLUMBIA, ET AL. ) | |
| ) | |
| *Defendants*. ) | |
| ) | |

**PLAINTIFF'S RESPONSE MEMORANDUM
AS A RESULT OF DEFENDANT'S ADMISSIONS**
(which require Amended Pleadings)

COMES NOW, the Plaintiffs, Comprehensive Health Academy, LLC, d.b.a. Comprehensive Health Academy School of Practical Nursing, and Michael Adedokun, by and through undersigned counsel, David E. Fox, Esq., who hereby submits its Reply to the Response Memorandum of the Defendants' to the Opposition to the Motion for Summary Judgment. In support of its position, the Plaintiff asserts the following:

**I. ADDITIONAL FACTS HAVE DEVELOPED SINCE THE TIME OF THE FILING OF THE MOTION TO DISMISS OR FOR SUMMARY JUDGMENT.**

In the Defendant's pleadings and subsequent to the Defendant's Motion to Dismiss/Summary Judgment, the Defendant's attach a "second declaration" signed by Karen Scipio-Skinner. Ms. Scipio-Skinner is a Defendant as an individual and she is the Executive Director of the Board of Nursing ("BON"). In her second declaration, she references the BON decision in May 2006 to withdraw (revoke) Comprehensive's accreditation. There was no public meeting of the BON where this was done – hence the only reasonable conclusion was that this BON action was taken at a secret meeting. Secret meetings are barred by District law (cite)[1]  In

---
[1] Please see attached Declaration of Michael Adedokun.

addition Plaintiffs have learned that Defendant keeps "tape recordings" of their secret meetings and at least one has "disappeared"[2].

Moreover, since the time of the Motion to Dismiss, the Defendants have issued a Final Notice of Intent to Deny accreditation to Plaintiff Comprehensive. They were forced to do this because they could not defend against the allegations made by Plaintiffs that the Defendants were holding CHA in legal limbo as to their status and had no intentions of following the procedure mandated by the DCMR. Additionally, Defendant has admitted that the BON has held secret meetings and Plaintiffs have discovered that Defendants have treated other similarly situated schools of nursing differently and have granted licensure to different individuals, who were not Nigerian (as are Plaintiffs), and who did not possess the qualifications for licensure required under Section 5600 of DCMR Title 17. Plaintiffs believe it is clear that Defendants have acted willfully, knowingly, recklessly and intentionally to deprive the Plaintiff, Michael Adedokun, of his right to Equal Protection under the law, and to deprive CHA of due process under law.

Plaintiff also notes that Defendant's Admissions of Violation of the Open Meeting Act necessitates an Amended Complaint – which is attached.

## II. APPLICABLE LEGAL STANDARDS

A. Motion to Dismiss Under Rule 12(b)(6)

Defendants have moved in part to dismiss the Complaint of the Plaintiffs for failure to state a claim. In so doing, Defendants failed to note that the District of Columbia and its agencies are Defendants. Additionally, the defendants allege that the Plaintiff, Michael Adedokun, lacks standing. The standards for judging a motion to dismiss are well-settled. The allegations of the complaint must be accepted as true and are read in the light most favorable to

---

[2] Please see attached Declaration of Michael Adedokun.

the plaintiffs. *See Scheuer v. Rhodes, 416 U.S. 232, 236 (1974)*. General allegations are presumed to embrace those specific facts necessary to support the claim. See Conley v. Gibson, 355 U.S. 41, 47 (1957). Under this standard, none of the Counts of the complaint may be dismissed.

        B.  Motion for Summary Judgment under Rule 56.

No discovery has been taken in this case. The parties have not even engaged in the mandatory initial disclosures required by Federal Rule of Civil Procedure 26(a)(1). Yet Defendants have filed a motion that purports to be, in the alternative, a motion for summary judgment. Such a motion is premature. *See Info. Handling servs v. Def. Automated Printing Servs., 338 F.3d 1024, 1032 (D.C. Cir. 2003)*("Summary judgment ordinarily is proper only after the plaintiff has been given adequate time for discovery.")[3] Moreover, Defendants' motion for summary judgment does not comply with either the requirements of *Federal Rules of Civil Procedure 56 or Local Rule 56.1.*

The Defendants argue that Michael Adedokun has not been injured and cannot prove that he has been injured. The Defendants are saying in their Motion for Summary Judgment that a party must prove that he was injured prior to discovery. This does not serve the purposes of *Rule 56*. It would be prudent for this court to simply deny the motion for summary judgment at this time.

Furthermore, the Defendants have failed to meet their initial burden under *Federal Rule of Civil Procedure 56.* As the D.C. Circuit has explained, a party moving for summary judgment must "satisfy its initial burden of production showing that there is no genuine issue exists and that it is entitled to judgment as a matter of law." *Beatty v. WMATA, 860 F.2d 1117, 1120 (D.C. Cir. 1988).* It is "not enough to move for summary judgment without supporting the motion in

---

[3] Internal quotation marks omitted.

any way or with a conclusory assertion that the plaintiff has no evidence to prove his case."[4] Instead, "[a]s the party moving for summary judgment, the [defendant] bears the initial burden of identifying *evidence* that demonstrates the absence of any genuine issue of material fact." [Emphasis added.][5]

This burden is reflected in Local Rule 56.1, which provides that a motion for summary judgment "shall be accompanied by a statement of material facts as to which the moving party contends there is no genuine issues, which *shall include references to the parts of the record relied on to support the statement."* Some of the "facts" alleged are just legal conclusions or are rhetoric of the Defendants' counsel. For example, Mr. Adedokun states that several the named Defendants have employment with an educational entity which competes with CHA and has a direct financial interest in the denial of accreditation to CHA[6]. Defendants merely state in their Reply Memorandum that "Adedokun's patently false claim…[is] wrong as a matter of fact.[7] Indeed, it appears that facts are at issue.

These are not indisputable facts and are ones which need to be ferreted out by deposition, discovery and/or trial. Just because the Defendants make statements does not make them true. Conflict of interest is a genuine issue of material fact and also a reason that the individual defendants have acted *ultra vires* and are entitled to be sued individually.[8] Defendants then act "confused" as to the list of genuine facts in dispute filed by Plaintiffs in their Opposition to the

---

[4] *Id.* At 1121 (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 328 (1986)(White, J., concurring)).
[5] *Greene v. Dalton*, 164 F.3d 671, 675 (D.C. Cir. 1999); see also, *Ashe v. Corley*, 992 F.2d 540, 544 (5th Cir. 1993).
[6] See Complaint at paragraph 36.
[7] See Reply Memorandum, n.50.
[8] See discussion infra.

Motion to Dismiss and for Summary Judgment.  On this ground alone, the motion for summary judgment should be struck.[9]

Nonetheless, out of an abundance of caution and without waiving Plaintiffs' claim that the summary judgment component of Defendant's motion should be denied for their failure to meet the requirements of the FRCP, Plaintiffs submitted with their Opposition affidavits to show that there are genuine disputes regarding every material fact Defendants assert, including an affidavit under Rule 56(f) describing some of the facts either within the control of Defendants and which require discovery to obtain, or which Plaintiffs are unable to obtain by affidavit at the current time.

To the extent there are any facts about which the Defendants' have satisfied their "initial burden of production," *Beatty, 860 F.2d at 1122*, a court deciding a motion for summary judgment is required to accept the non-movants' statements as true and accept all evidence and make all inferences in the non-movants' favor.[10]  Of course, when no discovery has occurred, as in this case, the court may "refuse the application for [summary] judgment or may order a continuance to permit…discovery to be had or may make such other order as is just." *Federal Rule Civil Procedure 56(f)*.  Plaintiffs affirmatively request that the Court exercise its authority to do so in this case in light of absence of *any* discovery.

### III.  ARGUMENT

A.  The Named District Officials Sued In their Official Capacities Are Proper Defendants

---

[9] *See Robertson v. American Airlines, Inc., 239 F. Supp. 2d 5, 9 (D.D.C. 2002)(striking motion for summary judgment when the defendants' statement "does nothing to assist the court in isolating the material facts, distinguished disputed from undisputed facts, and identifying the pertinent parts of the record.").*

[10] See *Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986).*

Defendants, Joyner and Karen Scipio-Skinner, are in charge of the District of Columbia agency that has denied Plaintiff Comprehensive due process and Defendant Minor (served recently she has yet to file her answer) is a "consultant" to the Board of Nursing (previously a paid consultant) and in charge of the process, are supposed to fairly investigate, assess, evaluate and treat equally all candidates for licensure before them.  No advantage is supposed to be given to any group over any other group.  Defendants, nonetheless, argue that these governmental officials, sued in their official capacities, cannot be named in a lawsuit because they have qualified immunity and because their agencies are *sui juris*.  Neither law nor logic supports that claim.

It is settled under the federal law under which the plaintiffs have brought their complaint -- Civil Rights Violations under Title VII – that it authorizes suit against government officials sued in their official capacities.  It is also settled that an official capacity action can proceed even when an action against the agency that a specific official heads is prohibited.  *See Kentucky v. Graham, 473 U.S. 159, 167 n. 14 (1985).  In Fields v. D.C. Department of Corrections, 789 F. Supp. 20 (D.D.C. 1992),* a suit was filed against and agency and the head official.  The court dismissed the District agency because it was not "suable" but addressed the fact that under the federal law, the ADA, the District official, Chief Dental Officer of the D.C. Department of Corrections, sued in his official capacity was authorized.  Thus, as a matter of federal law, nothing bars this action.  Other cases have likewise found that District officials in their official capacities are appropriate defendants (even when their agencies are not).  See, e.g., *Trifax Corp v. District of Columbia, 53 F. Supp. 2d. 20, 22 n.2, 26 & n.7 (D.D.C. 1999), aff'd, 314 F.3d 641 (D.C. Cir 2003)(*dismissing agencies but holding that named District officials "remain subject to

liability on Plaintiff's Constitutional claim to the extent that they are sued in their official capacities.")[11]

Government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. *Harlow v. Fitzgerald, 457 U.S. 800, 818, 73 L. Ed. 2d 396, 102 S. Ct. 2727 (1982); American Civil Liberties Union, Inc. v. Wicomico County, 999 F.2d 780, 784 (4th Cir. 1993)*. The Supreme Court in *Anderson v. Creighton, 483 U.S. 635, 97 L. Ed. 2d 523, 107 S. Ct. 3034 (1987)*, held that immunity from civil liability exists so long as the official's "actions could reasonably have been thought consistent with the rights they are alleged to have violated." *Id. at 638.*

In that regard, the Court explained that: The contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right. This is not to say that an official action is protected by qualified immunity unless the very action in question has previously been held unlawful . . . but it is to say that in the light of pre-existing law the unlawfulness must be apparent. *Id. at 640.* Thus, the doctrine of qualified immunity extends to law enforcement

officers a margin of error "when they navigate uncharted areas at the margins of constitutional criminal law." *Tarantino v. Baker, 825 F.2d 772, 774 (4th Cir. 1987).*

This is because ". . . there are two levels on which the immunity shield operates." First, the particular right must be clearly established in the law. Second, the manner in which the right

---

[11] See e.g. Quattlebaum v. Kelly, 648 A.2d 950, 951 n.2, 958 (D.C. 1994)(finding liable for violations of federal law "the District of Columbia and its highest ranking officials," including "Vincent Gray, in his official capacity as Director, Department of Human Services, District of Columbia"); Henderson v. District of Columbia, 493 A.2d 982, 986-987 & n.2 (D.C. 1985)(affirming damage award against various "officials in their individual and official capacities," including the Chief of Police of the D.C. Metropolitan Police Department.

applies to the actions of the official must also be apparent." *Maciariello v. Sumner, 973 F.2d 295, 298 (4th Cir. 1992), cert. denied, 506 U.S. 1080, 113 S. Ct. 1048, 122 L. Ed. 2d 356 (1993).* Therefore, "officials are not liable for bad guesses in gray areas; they are liable for transgressing bright lines." *Id.* The availability of qualified immunity is determined against a standard of objective reasonableness. *See Davis v. Scherer, 468 U.S. 183, 191, 82 L. Ed. 2d 139, 104 S. Ct. 3012 (1984).*

As the Court of Appeals for the Fourth Circuit has observed, "the Supreme Court's decisions place a special emphasis on the reasonableness of an officer's actions, requiring courts to make an objective inquiry into the facts facing the officer at the time of the alleged improper act." *Taylor v. Farmer, 13 F.3d at 120.* Consequently, whether an official may be held personally liable for unlawful official action turns on "the 'objective legal reasonableness' of the action . . . assessed in light of the legal rules that were 'clearly established' at the time it was taken." *Anderson v. Creighton, 483 U.S. at 639; see also Price v. Sasser, 65 F.3d 342, 345 (4th Cir. 1995).* And, the law "must be sufficiently clear that a reasonable officer would have known that his actions violated the law." *Amato v. City of Richmond, 875 F. Supp. 112, 1142 (E.D. Va. 1994) (emphasis in original).*

*Title 42 U.S.C. 1983* is written in broad terms. It purports to subject "[e]very person" acting under color of state law to liability for depriving any other person in the United States of "rights, privileges, or immunities secured by the Constitution and laws." 3 The Court has consistently recognized, however, that 1983 was not meant "to abolish wholesale all common law immunities." *Pierson v. Ray,* [386 U.S. 547, 554](#) *(1967).* The section is to be read "in harmony with general principles of tort immunities and defenses, rather than in derogation of

them." *Imbler v. Pachtman,* 424 U.S. 409, 418 *(1976); see also Tenney v. Brandhove,* 341 U.S. 367, 376 *(1951).*

Decisions in later cases are consistent with the functional approach to immunity employed in *Imbler. See, e.g., Westfall v. Erwin,* 484 U.S. 292, 296 *, n. 3 (1988); Forrester v. White,* 484 U.S. 219, 224 *(1988); Malley v. Briggs,* 475 U.S. 335, 342 *-343 (1986); Mitchell v. Forsyth,* 472 U.S. 511, 520 *-523 (1985); Briscoe v. LaHue,* 460 U.S. 325 *(1983); Harlow v. Fitzgerald,* 457 U.S. 800 *(1982); Butz v. Economou,* 438 U.S. 478 *(1978).* These decisions have also emphasized that the official seeking absolute immunity bears the burden of showing that such immunity is justified for the function in question. *Forrester, supra, at 224; Malley, supra, at 340; Harlow, supra, at 812; Butz, supra, at 506.* The presumption is that qualified, rather than absolute, immunity is sufficient to protect government officials in the exercise of their [500 U.S. 478, 487] duties. The Supreme Court has been "quite sparing" in its recognition of absolute immunity, *Forrester, supra, at 224*, and has refused to extend it any "further than its justification would warrant." *Harlow, supra, at 811.*

While we do not know the extent of the alleged violations of the subject officers, because discovery has not yet been allowed, the Plaintiffs assert facts in their complaint that these entities had a financial conflict of interest at the very minimum. In a Motion to Dismiss under Federal Rule 12(b0(6), all allegations asserted by the Petitioner should be considered as true. Furthermore, when considering a motion to dismiss pursuant to *Fed. R. Civ. P. 12(b)(6)* for failure to state a claim upon which relief can be granted, a court must accept the allegations in the complaint as true.[12] All reasonable inferences must be drawn in favor of the plaintiff, and a court should only dismiss a complaint for failure to state a claim "'if it is clear that no relief

---

12   See, e.g., Croixland Properties Ltd. Partnership v. Corcoran, 174 F.3d 213, 215 (D.C. Cir. 1999).

could be granted under any set of facts that could be proved consistent with the allegations.'" [13] As to the issue of qualified immunity, the Complaint sets forth facts that would not allow immunity to the Defendants, Joyner, Skinner, and Minor.

### B.  The Plaintiffs set forth facts which show violations under the Fifth Amendment.

Municipal liability can exist under 42 U.S.C. Section 1983.[14]  The liability exists when the municipality itself can be directly charged with fault for an unconstitutional deprivation.[15]  When the policy or custom fairly attributable to the municipality is the "moving force" behind the particular constitutional violation.[16]  The Defendants ignore these precepts and allege that (1) there is no violation of any Fifth Amendment right and (2) that there are no facts alleged that support a claim for relief under 42 U.S.C. 1983.

Actions which implicate constitutional violations under the Fifth Amendment show conduct that "shocks the conscience."[17] Plaintiffs have set forth facts which show:

(1) Discrimination based on national origin;

(2) Denial of accreditation when qualified in an effort to force the Plaintiff, CHA, to fire the Plaintiff, Adedokun;

(3) Secret meetings being held to discuss the nationality of Plaintiff, Adedokun; and,

---

[13]   Id. [quoting Hishon v. King & Spaulding, 467 U.S. 69, 73 (1984)]; see also Conley v. Gibson, 355 U.S. 41, 45-46 (1957); Price v. Crestar Secs. Corp., 44 F. Supp. 2d 351, 353 (D.D.C. 1999).
[14] See *Monell v. Dept. of Soc. Ser. Of City of New York*, 436 U.S. 658, 690 (1978).
[15] *See Wilson v. Lang*, 526 U.S. 603, 609 (1999); *Conn v. Gabbert*, 526 U.S. 286, 290 (1999); *County v. Sacramento v. Lewis*, 523 U.S. 833, 841 n.5 (1985) and *Baker v. McCollan*, 443 U.S. 137, 146-147 (1979).
[16] *See Polk County v. Dodson*, 454 U.S. 312, 326 (1981)(citing Monell, 436 at 694).
[17] *See Norris v. District of Columbia*, 737 F.2d 1148, 1151 (D.C. Cir. 1984); see also, *County of Sacramento v. Lewis, 523 U.S. 833, 833 (1998)*(standard for substantive due process violation is that the conduct shocks the conscience, citing *Johnson v. Glick, 481 F.2d 1028, 1033 (2d Cir.)*("'conduct that shocks the conscience'" test applies to determine whether force applied by correctional officer to pretrial detainee is unconstitutionally excessive), *cert. denied, 414 U.S. 1033 (1973).*

(4) Defendants (such as Ms. Minor) who gain money from the D.C. School of Nursing, while working with a competing nursing school (the University of District of Columbia), deciding on which schools get licensure.

These actions "shock the conscience." Therefore, a claim has been made which if proven at trial can garner Plaintiffs' recovery through damages.

### C.  The Plaintiff, Michael Adedokun, has standing to challenge Defendants' Actions

"To meet the 'case or controversy' requirement of Article III, a plaintiff must demonstrate: (1) that he has suffered 'injury in fact,' (2) that the injury is 'fairly traceable' to the defendants' actions; and (3) that a favorable judicial ruling will "likely" redress the plaintiff's injury."[18] Each plaintiff has standing to bring these Counts, some plaintiffs on multiple grounds. But this Court need not expend its resources resolving each of Defendants' challenges. It is enough that a single plaintiff has standing for each claim.[19]

**(1) Michael Adedokun**

Mr. Adedokun states that he has the qualifications for the Nursing Administrator job but he was denied approval and CHA was advised that he could not be their Nursing Administrator. The reasons for these actions are discriminatory in nature and based on his national origin. Other schools have Nursing Administrators with less qualifications. The defendants have treated applicants unequally. These facts establish Mr. Adedokun's standing.

First, he has an injury (he was denied approval because he is Nigerian when this license is generally available to other members of his profession and that he needs that approval now and in the future. Second, he has identified Defendants as the cause of his injury -- by applying

---

[18] *Animal Legal Def. Fund v. Glickman*, 154 F.3d 426, 431 (D.C. Cir. 1998)(en banc)(citing *Bennett v. Spear*, 520 U.S. 154, 167 (1997)).
[19] See *Capital Area Immigrants' Rights Coalition v. United States Dep't of Justice*, 264 F. Supp. 2d 14, 22 n. 7 (D.D.C. 2003).

the regulations in a discriminatory manner. Third, the court can remedy his injury (by ordering that Mr. Adedokun's approval be granted.) This is plainly sufficient.[20]

Defendants contend that Mr. Adedokun has no standing to sue because he has no injury because he has "no right to a license". The Defendants' challenge that Mr. Adedokun has no right to approval is an argument on the merits about whether federal law allows discriminatory and unequal practices in the area of licensure. If Mr. Adedokun's view of federal law is correct, he has alleged a personal injury. That is all that is necessary to show standing.[21]

### IV.  CONCLUSION

The Defendants through conclusory statements asserts that there are no facts alleged by the Plaintiffs which could sustain their claims. The statements of the Defendants, however, show that there are questions as to the actions of the Defendants, Skinner, Joyner, and Minor. These questions are "issues of material fact." Thus, the matter should go forward to the discovery phase.

Additionally, the fact that a Notice of Intent has been issued does not mean that there are not claims upon which the Plaintiffs may recover. The "shocking" actions of the Defendants and the BON go beyond the actual procedure for accreditation. They relate to the very nature of process and violations of due process that violate the Fifth and Fourteenth Amendments to the U.S. Constitution. Therefore, even if administrative remedies have not been exhausted, they cannot be addressed during an appeal of a NOI. In fact, the administrative agency has no jurisdiction to decide the constitutional issues raised by the Complaint.

---

[20] See Pickern v. Holiday Quality Foods, Inc., 293 F.3d 1133, 1137-38 (9th Cir.), cert denied, 537 U.S. 1030 (2002).
[21] See Campbell v. Clinton, 203 F.3d 19, 23-24 (D.C. Cir.), cert. denied, 531 U.S. 815 (2000)(warning against "conflat[ing] standing with the merits" and explaining that at "the standing stage we must take as correct…[legal] claim."

                    Respectfully submitted,

_____
David E. Fox, Esq. – DC Bar No. 165258
1325 18th Street, NW
Suite 103
Washington, DC  20036
(202) 955-5300
*Attorney for Plaintiff*

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that on the   10th    day of   October, 2006, I caused a copy of the foregoing Plaintiff's Response Memorandum As a Result of Defendant's Admissions (which required Amended Pleadings) to be mailed first class, postage prepaid to Ellen Efros, Esq., Office of the Attorney General, 441 Fourth Street, NW, Suite 600, Washington, DC  20001.

_____
David E. Fox, Esq.

## DECLARATION

I, Michael Adedokun, hereby state under oath:

That I am a principal in an entity known as Comprehensive Health Academy ("Comprehensive").

    That I regularly monitor the meetings of the District of Columbia Board of Nursing ("BON").  I attend most of the meetings and I read minutes when available.

    That I believe there was a "secret executive" meeting of the BON in May 2006 when a vote was taken to take from Comprehensive its provisional accreditation.

That there are and have been rumors that the BON holds "secret" meetings where most decisions are made and that tape recordings of those meetings are made and minutes of those meetings are prepared.

That I was born in Nigeria.

That the principals of Comprehensive had difficulty recruiting nurse administrators to work in our school so I opted to return to school and I earned a Masters of Nursing degree.

That I also have experience managing nursing facilities and developing educational programs for nurses at nursing facilities.

I believe that discovery is needed, specifically:

- Tapes of BON secret meetings

- Minutes of BON secret meetings

- Depositions of BON members

- All documents in BON files that the BON believes tend to support its negative evaluation of Comprehensive

- All BON evaluations of other nursing programs for the approval of nurse administrators with qualifications the same as or less than mine

- The BON records as to other nursing schools who were granted an "opportunity to cure" deficiencies (whereas Comprehensive was not granted a hearing followed by an opportunity to cure)

- All documents in BON file that they believe tend to show I am not qualified to work as Nurse Administrator of Comprehensive

I believe that the aforesaid depositions and written discovery will show that Defendant BON held secret meetings, violated the DCMR, took action against me and against

Comprehensive because of my national origin (Nigerian), took negative action against Comprehensive based on conflict of interest by the persons evaluating Comprehensive who also worked for a competing school (District of Columbia Nursing School).

    I affirm that these matters are true and that I have personal knowledge thereof.


Dated: _____


                                                              _____
                                                              MICHAEL ADEDOKUN